IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **JAYSON JEFFREY PENN, et al.**, <br><br> *Defendants.* | Case No. 1:20-cr-00152-PAB |

## MR. BLAKE'S MOTION FOR
## DISCOVERY OF JURY SELECTION PROCEDURES

Pursuant to 28 U.S.C. § 1867(f), Rickie Blake respectfully moves for discovery of this Court's jury selection plan and any related COVID-19 juror excuse policies. Mr. Blake has an unqualified statutory right to documents reflecting and related to the procedures by which his grand jury was selected and a future petit jury will be selected.

A grand jury returned the Superseding Indictment in this case on October 6, 2020, in the midst of the COVID-19 pandemic. *See* Superseding Indictment, ECF No. 101. Prospective grand jurors may have deferred or been excused from jury service by, for example, indicating that they had an underlying medical condition that put them at a higher risk of developing serious health complications from COVID-19 or that they live with, or provide direct care for, someone with such a condition. Even if the grand jury was empaneled prior to the commencement of the pandemic, grand jurors may have been excused from service in light of COVID-related concerns. Additionally, in the absence of any cure for COVID-19 on the immediate horizon, trial in this

matter may be held when the pandemic will be ongoing, and prospective jurors who receive a summons for jury service may seek to defer their service or be excused in light of concerns about contracting COVID-19.

The COVID-19 pandemic has affected distinctive groups differently. Accordingly, the process by which a grand jury or petit jury is ordinarily selected may not comply with the fair cross-section requirement during the unprecedented COVID-19 pandemic and any adjustments made to the ordinary jury selection process may not resolve, and can even exacerbate, these concerns. As such, Mr. Blake respectfully seeks discovery related to the jury selection plan during the COVID-19 pandemic to ensure that his Fifth and Sixth Amendment rights are not violated.[1]

## DOCUMENT REQUESTS

Mr. Blake requests the following documents be produced by the Clerk of the Court or, to the extent they are in the Government's possession, by the Government:[2]

---

[1] The phrase "during the COVID-19 pandemic," as used in this motion, refers to the time period from March 13, 2020 to present, during which the COVID-19 pandemic has affected operating procedures in this District. On March 13, 2020, Chief Judge Brimmer suspended "all civil, criminal petit, and grand jury selections and jury trials" in this District, effective immediately, through April 3, 2020. Gen. Order 2020-2 (D. Colo. Mar. 13, 2020), https://tinyurl.com/y6ba9dg7. All grand jury proceedings subsequently were suspended, such that "a grand jury within the District of Colorado [was] not available," from March 27 until May 29, 2020. *See* Gen. Order 2020-3 (D. Colo. Mar. 27, 2020), https://tinyurl.com/yckzyefd (grand jury proceedings suspended through May 1, 2020); Gen. Order 2020-6 (D. Colo. Apr. 21, 2020), https://tinyurl.com/y6ph44fy (grand jury proceedings suspended through May 29, 2020). Jury Division 3 stopped convening grand juries as of August 3, 2020 and has yet to resume doing so. Gen. Order 2020-11 (D. Colo. July 2, 2020), https://tinyurl.com/y3pqua28. And criminal jury trials have remained suspended since March 13, 2020, with limited exception.

[2] Throughout these requests, "documents" includes electronic data and, to the extent that documents and/or data are kept in accessible electronic form, Mr. Blake requests them in that form.

(1) The Jury Plan for the District of Colorado currently in effect, if different from that available on the Court's website (*Revised Jury Plan for Random Jury Selection*, U.S. D. CT. D. COLO., Mar. 1, 2017, https://tinyurl.com/y3ekg9td ("D. Colo. Jury Selection Plan")), and a description of any changes that have been made in the selection of prospective jurors due to the COVID-19 pandemic, to the extent not otherwise stated in the Court's Jury Trial Protocols (*Jury Trial Protocols*, U.S. D. CT. D. COLO., June 30, 2020, https://tinyurl.com/y6aspn84));

(2) Documents sufficient to show: (a) the Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation of all grand juries empaneled in the District during the COVID-19 pandemic; (b) the Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation of all grand jury members excused or deferred from participating in a grand jury after it was empaneled in the District; and (c) the Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation of any grand jury members added after a grand jury was originally empaneled in the District;

(3) The Juror Qualification Questionnaire distributed to potential grand or petit jurors, as contemplated in Section 14 of the Court's Plan, and any additional forms being distributed during the COVID-19 pandemic;

(4) The District's two most recently submitted AO-12 forms;

(5) Documents sufficient to show: Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation for those individuals on the Master Jury Wheel in this District;

(6) Documents sufficient to show: Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation for those individuals eligible for jury service in this District;

(7) Documents sufficient to show: Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation for those individuals (a) to whom summonses and jury questionnaires were sent, as contemplated by Sections 11, 12, and 15 of the Court's Plan, and (b) those deemed qualified for jury service, as contemplated by Section 16 of the Court's Plan;

(8) Documents identifying all excuses received from potential jurors and, separately, all excuses accepted from potential jurors, for the District, as contemplated by Sections 17 and 18 of the Court's Plan, during the COVID-19 pandemic;

(9) Documents reflecting any policies or practices established by the Court or Clerk's Office for excusing grand or petit jurors during the COVID-19 pandemic;

(10)   Documents sufficient to show: Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation for all prospective jurors for the District who have been excused from or granted a deferral of their jury service based on the COVID-19 pandemic; and

(11)   Once criminal trials in this District resume and a trial schedule in this matter is set, any additional documents or data responsive to Request Nos. 2–3 and 5–10 for the period between March 13, 2020 and 30 days before voir dire in this matter.

## ARGUMENT

The Fifth and Sixth Amendments to the United States Constitution guarantee a criminal defendant the right to an impartial grand and petit jury. U.S. CONST. amends. V, VI. The Supreme Court has held that "the presence of a fair cross section of the community on venires, panels, or lists from which petit juries are drawn is essential to the fulfillment of the Sixth Amendment's guarantee of an impartial jury trial in criminal prosecutions." *Taylor v. Louisiana*, 419 U.S. 522, 526, 530–31 (1975); *accord United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) ("The Sixth Amendment guarantees a defendant the right to a jury pool consisting of a fair cross section of the community."). Further, the Court has explained that "[t]he Fifth Amendment requires the Federal Government to use a grand jury to initiate a prosecution" and, because the grand jury "controls not only the initial decision to indict, but also significant decisions such as how many counts to charge and whether to charge a greater or lesser offense, . . . [t]he integrity of these decisions depends on the integrity of the process used to select the grand jurors." *Campbell v. Louisiana*, 523 U.S. 392, 398–99 (1998); *see Peters v. Kiff*, 407 U.S. 493, 501, 504 (1972) (plurality op.) ("[W]hatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law."); *see also United*

4

*States v. Serubo*, 604 F.2d 807, 816 (3d Cir. 1979) ("In federal criminal proceedings, the right to indictment by an unbiased grand jury is guaranteed by the fifth amendment.").

To protect these rights, Congress passed the Jury Selection and Service Act of 1968 ("JSSA"), which made it "the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. For the reasons set forth below, Mr. Blake has a statutory right under the JSSA to discovery of materials relating to jury selection. His Document Requests, listed above (*supra* at 2–4), should be granted because they are necessary for him to evaluate whether the unprecedented COVID-19 pandemic and the jury selection process and policies in place during the pandemic result in the impermissible exclusion of distinctive groups. *See* 28 U.S.C. § 1867(f).

## I. MR. BLAKE HAS AN UNQUALIFIED STATUTORY RIGHT TO DISCOVERY OF THE JURY SELECTION MATERIALS HE REQUESTS.

The JSSA provides that a defendant "may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions" of the statute in selecting the grand jury or petit jury. 28 U.S.C. § 1867(a). A violation is "substantial" if it frustrates any of three principles on which the JSSA is based: "(1) the random selection of jurors, (2) culling of the jury from a fair cross-section of the community, and (3) the determination of disqualifications, exemptions, and exclusions based on objective criteria." *United States v. Kamahele*, 748 F.3d 984, 1022 (10th Cir. 2014). "The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . as may be necessary in the preparation or presentation" of such a

motion. 28 U.S.C. § 1867(f). That motion must be filed "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds . . . [for the motion], whichever is earlier." *Id.* § 1867(a).

Section 1867(f) creates an "*unqualified right* to inspect jury lists." *Test v. United States*, 420 U.S. 28, 30 (1975) (per curiam) (emphasis added). "Because the right of access to jury selection records is 'unqualified,' a district court may not premise the grant or denial of a motion to inspect upon a showing of probable success on the merits of a challenge to the jury selection provisions." *United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996); *accord United States v. Williamson*, 903 F.3d 124, 133 (D.C. Cir. 2018) (district court erred in denying defendant access to jury commission records); *United States v. Curry*, 993 F.2d 43, 44 (4th Cir. 1993) (district court erred in denying defendant access to master list of jurors from which grand jury indicting him was selected; remanding to allow review of jury list and opportunity to move for new trial); *United States v. Lawson*, 670 F.2d 923, 926 (10th Cir. 1982) (district court erred by denying motion to inspect and copy jury selection materials pursuant to § 1867(f); remanding for opportunity to inspect records and file motion, with instruction that defendant's conviction be set aside if defendant established that method of jury selection violated the law); *Government of Canal Zone v. Davis*, 592 F.2d 887, 888–89 (5th Cir. 1979) (district court erred in denying defendant access to jury selection records; reversing convictions and remanding for appellants to determine whether jury selection process warrants challenge and whether to exercise their right to a jury trial); *see also United States v. Hicks*, No. 07-cr-184-WYD, 2008 WL 5396013, at *1 (D. Colo. Dec. 22, 2008) (citing *Test* for rule that "an unqualified right to inspect jury lists, in connection with preparation of motions challenging jury selection procedures, is required by

6

both the plain text of the Jury Selection and Service Act and its overall purpose of insuring grand and petit juries selected at random from a fair cross section of the community" (internal quotation marks omitted)).

Mr. Blake seeks to exercise his statutory right to discovery. He makes his discovery requests for the purpose of considering and preparing a motion for relief in light of the COVID-19 pandemic. Further, each of his requests falls squarely within the ambit of § 1867(f), because it pertains to "[t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process." 28 U.S.C. § 1867(f).

Similar requests have recently been granted by a number of courts. For example, in *United States v. Merrick*, No. 20-cr-009-JD, 2020 WL 4808634 (D.N.H. Aug. 18, 2020), the court granted the defendant's request for discovery of grand juror selection procedures and any related COVID-19 excuse policies under § 1867(f) in order to evaluate whether to file a motion to dismiss premised on the impermissible exclusion of African Americans and other minorities from the grand jury. *See also United States v. Sullivan*, No. 20-cr-337-WHO-1, 2020 WL 5944433 (N.D. Cal. Oct. 7, 2020) (in case where indictment was returned during COVID-19 pandemic, granting § 1867(f) motion for access to grand jury selection materials in order to determine whether to seek relief); *United States v. Holmes*, No. 18-cr-258-EJD-1, 2020 WL 5408163 (N.D. Cal. Sept. 9, 2020) (in case where superseding indictments were returned during COVID-19 pandemic, granting in part § 1867(f) motion for discovery).

## II. THE REQUESTED MATERIALS ARE NECESSARY FOR MR. BLAKE TO EVALUATE WHETHER TO SEEK RELIEF BASED ON HIS FIFTH AND SIXTH AMENDMENT RIGHTS TO AN IMPARTIAL JURY.

As noted above, Mr. Blake need not make any showing to entitle him to discovery of jury selection materials pursuant to 28 U.S.C. § 1867(f). *See supra* at 6–7. Nonetheless, Mr. Blake demonstrates below that he seeks only materials "*as may be necessary* in the preparation or presentation of a motion under [§ 1867(a)]." 28 U.S.C. § 1867(f) (emphasis added).

### A. The Document Requests seek information necessary to determine whether distinctive groups of jurors are being systematically excluded from jury selection in a statistically significant way.

Mr. Blake's Document Requests are drafted to provide him with the information necessary to consider each element of the governing test for evaluating whether a jury selection procedure provides for a fair cross section of jurors from the community. To demonstrate that his constitutional rights are violated by any particular jury selection procedure, Mr. Blake would need to show:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community;
>
> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
>
> (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979); *accord Berghuis v. Smith*, 559 U.S. 314, 327 (2010).

African Americans and Hispanics are "distinctive" groups of jurors. *See Holland v. Illinois*, 493 U.S. 474, 478–80 (1990) ("It has long been established that racial groups cannot be

8

excluded from the venire from which a jury is selected."); *Garcia-Dorantes v. Warren*, 801 F.3d 584, 600 (6th Cir. 2015) (African Americans and Hispanics are "distinctive" groups); *United States v. Carmichael*, 560 F.3d 1270, 1280 (11th Cir. 2009) (African Americans are a "distinctive" group); *United States v. Weaver*, 267 F.3d 231, 240 (3d Cir. 2001) (African Americans and Hispanics are "distinctive" groups); *United States v. Lara*, 181 F.3d 183, 192 n.1 (1st Cir. 1999) (Hispanics are a "distinctive group"; collecting cases from Second and Ninth Circuits holding the same); *United States v. Shinault*, 147 F.3d 1266, 1271–72 (10th Cir. 1998) (Government conceded that "Asians, Blacks, and Hispanics are all distinctive groups"); *United States v. Gault*, 141 F.3d 1399, 1402 (10th Cir. 1998) (Government conceded that "Hispanics, Native Americans and African Americans are distinct groups").

Likewise, the disparate exclusion of those who fall within a broad age group may result in the exclusion of a distinctive group. *See United States v. DiTommaso*, 405 F.2d 385, 391 (4th Cir. 1968) ("A community cross-section, however, will invariably contain a broad representation of individuals of various ages.").[3]

In order to determine whether representation of any distinctive group is not "fair and reasonable" under the second prong of the *Duren* test, Mr. Blake needs data with which he can compare those in the community to those in the jury pools in this District. *See* 439 U.S. at 364–66 (data from which statistical comparisons can be drawn is necessary to make out the second

---

[3] Although the Supreme Court has held that "the young" (defined as those under age 25) do not constitute a cognizable group (*Hamling v. United States*, 418 U.S. 87, 137 (1974) (pre-*Duren*); *see also United States v. Green*, 435 F.3d 1265, 1271 (10th Cir. 2006) (noting that other courts have held that "younger people" and "persons over 70" are not distinctive groups)), this authority involves the exclusion only of relatively narrow age groups, *i.e.*, the youngest or the oldest

and third prongs). In this Circuit, the second prong of *Duren* is evaluated in relation to the absolute and comparative disparities of a distinct group's representation in the community as compared to the jury pool or venire, and "[c]ensus data and the responses to the juror qualification questionnaires are used to compute these statistics." *Gault*, 141 F.3d at 1402. The Document Requests seek the demographic data required to make these comparisons (Request Nos. 2, 4–7, 11). *See, e.g.*, *Duren*, 439 U.S. at 364–66 (where women make up 50% of the population, but jury venires contained only 15% women, those venires were not "reasonably representative" of community); *Shinault*, 147 F.3d at 1272 (when evaluating whether District of Kansas' jury selection procedures unconstitutionally excluded Asians, Blacks, and Hispanics from jury service, appropriate to compare "minorities' percentages on the qualified wheel to their percentage in the entire community").

The third prong of the *Duren* test ("systematic exclusion") requires a showing of exclusion over time, *i.e.*, that the exclusion is "inherent in the particular jury-selection process utilized." 439 U.S. at 366. The Document Requests seek information during the pandemic relating to the procedure by which jurors are considered for service (Request Nos. 1, 3, 9); excuses given by jurors and accepted by the Court for excusing or deferring jury service (Request No. 8); and data reflecting those excused from service or whose service was deferred (Request Nos. 10–11). This information will reflect the Court's jury selection practices during the COVID-19 pandemic and allow Mr. Blake to determine whether the Court's procedures are systematically causing distinctive groups to be excluded over this extended period in a manner

---

potential jurors. The exclusion of a broad band of ages likely would deprive a defendant of a cross-section of the community.

that violates his Sixth Amendment rights. *See Sullivan*, 2020 WL 5944433, at *4 (granting § 1867(f) motion and agreeing that "the grounds for excusal and the disposition of juror qualifications [during the COVID-19 pandemic] are directly relevant to whether the grand jury was selected at random"); *see also, e.g.*, *Duren*, 439 U.S. at 366 ("systematic exclusion" shown where "large discrepancy occurred not just occasionally but in every weekly venire for a period of nearly a year").

### B. There is reason to believe distinctive groups may be disproportionately being improperly excluded from jury service in the District of Colorado during the pandemic.

#### 1. African-American and Hispanic individuals may be disproportionately being excluded from the jury selection process during the pandemic.

After many months of enduring and studying the coronavirus, it is now well known that COVID-19 does not affect all individuals equally. Medical professionals have confirmed that people of color are at "increased risk of getting sick and dying from COVID-19." *Health Equity Considerations and Racial & Ethnic Minority Groups*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 24, 2020), https://tinyurl.com/ybwns8j7.

Data from the Colorado Department of Public Health and Environment released in late August reflected that "Hispanic people have accounted for nearly 38% of all patients hospitalized for COVID-19 between March 1 and Aug. 15, even though they represent just 22% of Colorado's overall population," and Black people in Colorado "make up almost 5% of the state's population, but account for nearly 10% of the COVID-19 hospitalizations." Dallas Heltzell, *Minorities still hit harder by COVID-19 in state*, BIZWEST (Sept. 2, 2020), https://tinyurl.com/y4mw23lk; John Ingold, *Hispanic, Black Coloradans have been disproportionately hospitalized because of coronavirus*, COLORADO SUN (Aug. 20, 2020),

https://tinyurl.com/y48kfz7x.  In particular, in Denver, COVID-19 cases among Hispanic people consistently have far outpaced those of other groups:



Evan Wyloge, *Colorado's Hispanics remain hardest hit by coronavirus*, COLORADO SPRINGS GAZETTE (Sept. 6, 2020), https://tinyurl.com/y5c3kjxd.  Nationwide, the number of COVID cases among Blacks is 2.6 times that of the general population and the hospitalization rate is 4.7 times higher.  *COVID-19 Hospitalization and Death by Race/Ethnicity*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://tinyurl.com/yx9esqs7 (last updated Aug. 18, 2020).  Similarly, a Hispanic or Latino person's rate of contracting COVID-19 is 2.8 times higher than the general population, and his or her hospitalization rate is 4.6 times higher.  *Id.*

A number of courts have acknowledged the disparate effect coronavirus has had on racial minorities.  In the course of granting compassionate release under 18 U.S.C. § 3582(c)(1)(A), courts have cited race as a reason an individual may be more susceptible to suffering extreme

12

illness or dying from COVID-19. *See, e.g.*, *United States v. Mason*, No. 17-cr-195 (TSC), 2020 WL 4199553, at *1–2 (D.D.C. July 10, 2020) ("The COVID-19 fatality rate increases with age, is higher for men than women, and is among the highest for African Americans."); Order at 10, *United States v. Kellogg*, No. 1:12-cr-383-CAP-JCF-1 (N.D. Ga. July 8, 2020), ECF No. 405 (noting that African Americans "are five times as likely to be hospitalized or die from COVID-19 than a non-Hispanic white person").

Recent studies confirm that African American and Hispanic prospective jurors are less likely to appear in the jury pool during the COVID-19 pandemic:

> A June [2020] survey of 1,000 registered voters conducted by the National Center for State Courts [("NCSC")] found that 64% of Latino respondents and 58% of Black respondents said they'd report for jury duty, compared to 69% of whites. . . . The NCSC poll found those least likely to report for jury duty during the pandemic were Black and Latina women across the age spectrum, as well as older white women. The demographic pools most likely to show up were younger white men, conservative white men, and white men without a college degree.

Carla Bayles, *Can You Get A Fair Jury Trial During The Pandemic?*, LAW360 (Aug. 30, 2020), https://tinyurl.com/y5u9lygu. Experts tether these distinctive groups' decreased representation in jury pools specifically to the disproportionate effect that coronavirus is having on them. *See id.*

> 2. *Certain age groups may be disproportionately being excluded from the jury selection process during the pandemic.*

Although an individual of any age can contract COVID-19, the disease has proven substantially more harmful and often lethal for older adults. Recent data reflects that those between the ages of 30 and 39 are twice as likely to be hospitalized from COVID-19 and four times as likely to die as those aged 18 to 29; those between the ages of 40 and 49 are three times as likely to be hospitalized from COVID-19 and ten times as likely to die as those aged 18 to 29;

13

and those between the ages of 50 and 64 are four times as likely to be hospitalized from COVID-19 and thirty times as likely to die as those aged 18 to 29.[4]

The Document Requests will help determine whether individuals in a distinctive age group are disproportionately being excluded from the jury pool during the pandemic because they are being excused from jury service or having their jury service deferred. If so, Mr. Blake's right to have had a grand jury drawn from a fair cross section of the community may have been violated.[5]

## CONCLUSION

Mr. Blake seeks discovery of the District of Colorado's jury selection procedures pursuant to his unqualified statutory right of access to those materials. *See* 28 U.S.C. § 1867(f). Each of his Discovery Requests falls within the letter of the statute and is necessary to help him understand whether the jury selection procedures in place in this District during the COVID-19 pandemic comport with his Fifth and Sixth Amendment rights to an impartial jury drawn from a fair cross section of the community and, if not, to help him prepare a motion for relief. Mr. Blake has reason to be concerned that the jury selection procedures and policies in place during the unprecedented COVID-19 pandemic may result in the underrepresentation of racial

---

[4] *COVID-19 Hospitalization and Death by Age*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://tinyurl.com/y5h7wgob (last updated Aug. 18, 2020).

[5] This concern is heightened by the fact that the jury selection plan in the District of Colorado even prior to the pandemic allowed those over 70 to opt out of jury service. *See* D. Colo. Jury Selection Plan § 17(b). Thus, if, for example, those in their 50's and 60's are disproportionately opting out during the pandemic, while people over 70 are opting out based on age, then the jury pool will be dramatically skewed such that it does not include a fair cross-section of the community with respect to age.

minorities and older individuals in a manner that deprives him of his constitutional rights and seeks data to which he is statutorily entitled to help him determine if this is the case.

Date:  October 13, 2020                    Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack
ROBBINS, RUSSELL, ENGLERT, ORSECK,
 UNTEREINER & SAUBER LLP
2000 K Street N.W., 4th Floor
Washington, D.C. 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
bpollack@robbinsrussell.com

*/s/ Wendy W. Johnson*
Wendy W. Johnson
RMP LLP
5519 Hackett Road, Suite 300
Springdale, Arkansas  72762
Telephone:  (479) 443-2705
Fax:  (479) 443-2718
wjohnson@rmp.law

*Counsel for Mr. Blake*

15

## CERTIFICATE OF SERVICE

On this 13th day of October, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Colorado by using the Court's CM/ECF system, which will serve electronic notification of this filing on all counsel of record.

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack
ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
2000 K Street N.W., 4th Floor
Washington, D.C. 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
bpollack@robbinsrussell.com

*Counsel for Mr. Blake*