**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**UNITED STATES OF AMERICA**,

v.

**JAYSON JEFFREY PENN, et al.**,

*Defendants.*

Case No. 1:20-cr-00152-PAB

## MR. BLAKE'S MOTION FOR A BILL OF PARTICULARS

On October 6, 2020, Rickie Blake was charged with nine others in a superseding indictment with one count of violating 15 U.S.C. § 1. The superseding indictment alleges he entered into an illegal price-fixing and bid-rigging conspiracy in the chicken supply industry, a conspiracy that allegedly lasted for at least seven years. Other than in boilerplate language, the superseding indictment references Mr. Blake only a handful of times, alleging that he participated in a five-minute telephone call on November 13, 2012, an eight-minute telephone call on November 28, 2012, an eight-minute call on September 3, 2014, a 30-second telephone call on March 26, 2015, a three minute and fifteen second telephone call on March 27, 2015, and a ten-minute telephone call on September 6, 2017. The superseding indictment provides no information about what was allegedly said in any of these calls or how they were in furtherance of the conspiracy. The superseding indictment does not explain when or how Mr. Blake allegedly joined this conspiracy, who other than the named defendants were allegedly members of the conspiracy, or whether Mr. Blake participated in or was even aware of any overt acts in furtherance of the alleged conspiracy, other than the handful of telephone calls, occurring years

apart and lasting in total about a half hour, in which the superseding indictment alleges he participated. Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, Mr. Blake requests a bill of particulars that identifies: (i) persons or companies known to the Government who the Government will contend at trial were Mr. Blake's co-conspirators; and (ii) when and through whom Mr. Blake allegedly joined the conspiracy and the overt acts the Government alleges were undertaken by Mr. Blake in furtherance of the conspiracy.[1]

## BACKGROUND

On June 2, 2020, the Grand Jury charged Defendants Penn, Fries, Brady, and Austin with one count of violating 15 U.S.C. § 1. Dkt. 1. Four months later, the Grand Jury returned a superseding indictment that also charged Mr. Blake and five others (Mulrenin, Kantola, Little, Lovette, Roberts), in addition to the original four defendants. Superseding Indictment, Dkt. 101. The superseding indictment charges all defendants with one count of violating Section 1 of the Sherman Act, 15 U.S.C. § 1, and also charges Defendant Little with making a false statement and obstructing justice, in violation of 18 U.S.C. §§ 1001 and 1512(c). *Id.*

The superseding indictment alleges that all defendants, "together with co-conspirators known and unknown to the Grand Jury," participated in a conspiracy "to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products sold in the United States." Dkt. 101 ¶ 1. The conspiracy allegedly began "at least as

---

[1] "[I]t is a settled rule that a bill of particulars cannot save an invalid indictment." *Russell v. United States*, 369 U.S. 749, 770 (1962). Mr. Blake reserves his right to challenge the validity of the superseding indictment and seeks this bill of particulars only to the extent it survives any motions to dismiss. Mr. Blake incorporates by reference the legal authorities set forth in the Motion for Bill of Particulars by Jayson Penn (Dkt. 183).

early as 2012 and continu[ed] through at least early 2019" and allegedly took place "in the State and District of Colorado and elsewhere." *Id*.

With respect to Mr. Blake, the superseding indictment identifies only a handful of sporadic phone calls, ranging from a half-minute to ten minutes, that Blake allegedly made or received across a five-year period. *See id*. at ¶ 56 (5 minutes on November 13, 2012); ¶ 58 (8 minutes on November 28, 2012); ¶ 105 (8 minutes on September 3, 2014); ¶ 122 (0.5 minutes on March 26, 2015); ¶ 123 (3 minute, 15 seconds on March 27, 2015); ¶ 142 (10 minutes on September 6, 2017). In aggregate, these calls lasted for less than 35 minutes. The superseding indictment does not identify any specific acts that Mr. Blake allegedly performed other than participating in these six phone calls, the content of which is not alleged.

To date, the Government has produced over 12.7 million documents of discovery. *See* Dkt. 199 ¶ 2. The discovery, while extraordinarily voluminous, does not identify for Mr. Blake the persons with whom the Government alleges he conspired, when or through whom he allegedly joined the charged conspiracy, or the acts undertaken by Mr. Blake that the Government alleges were in furtherance of the conspiracy.

## ARGUMENT

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, "[t]he court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) (internal quotation marks omitted). As the Notes of the

3

Advisory Committee reflect, the Rule was amended in 1966 to ensure that requests for bills of particular would be more liberally granted: "The amendment to the first sentence eliminating the requirement of a showing of cause is designed to encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." In criminal antitrust cases in particular, courts have "recognized that such cases are different from the 'ordinary' criminal case," and that "[g]reater specificity is warranted in antitrust cases where the facts generally are not so much in issue as is how the law should be applied to the facts." *United States v. Bestway Disposal Corp.*, 681 F. Supp. 1027, 1029–30 (W.D.N.Y. 1988).

"It is axiomatic that a criminal defendant should be given enough information about the offense charged so that he may prepare adequately for trial." *United States v. Rogers*, 617 F. Supp. 1024, 1027 (D. Colo. 1985). Factors such as "the complexity of the offense charged, the clarity of the indictment and the degree of discovery" are relevant to the court's analysis. *Id.* at 1026. The district court's discretion to grant or deny a motion for bill of particulars is "very broad*.*" *Id.* The Tenth Circuit, however, has concluded a district court abuses its discretion when it fails to order a bill of particulars where the defendant "could not know from the face of the indictment with any particularity the evidence against which he would have to defend himself at the trial and could not adequately prepare his case for trial." *Cefalu v. United States*, 234 F.2d 522, 524 (10th Cir. 1956).

**I.    THE GOVERNMENT SHOULD BE REQUIRED TO IDENTIFY KNOWN UNINDICTED CO-CONSPIRATORS.**

The superseding indictment alleges that Mr. Blake and his co-defendants, "together with their co-conspirators known and unknown to the Grand Jury . . . participated in a continuing

4

network of Suppliers and co-conspirators." Dkt. 101 ¶ 47; *see also id.* ¶ 1 ("co-conspirators known and unknown"); *id.* ¶ 45 ("[o]thers not made Defendants in this Indictment participated as co-conspirators"). These allegations leave Mr. Blake guessing as to the identities of those with whom the Government contends he engaged in the alleged conspiracy.

The Tenth Circuit has noted with approval the government's voluntarily provision of a bill of particulars identifying unindicted co-conspirators in a Sherman Act § 1 case. *See United States v. Mobile Materials, Inc.*, 871 F.2d 902, 909–10 (10th Cir. 1989) (per curiam), *opinion supplemented on reh'g*, 881 F.2d 866 (10th Cir. 1989), *abrogated on other grounds by Bloate v. United States*, 130 S. Ct. 1345 (2010) ("A bill of particulars was the proper avenue for greater factual detail. In this case, the government voluntarily came forward with a bill of particulars and an amended bill of particulars specifying particular projects, companies and persons thought to be directly involved.") (internal citation omitted); *see also United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 472 (10th Cir. 1990) (government voluntarily provided bill of particulars identifying unindicted co-conspirators in a Sherman Act § 1 case); *United States v. Washita Const. Co.*, 789 F.2d 809, 813 n.4 (10th Cir. 1986) (same).

In this District, in *Rogers*, the court ordered the government to provide a bill of particulars identifying "undisclosed and unidentified co-conspirators, aiders and abettors, and other individuals involved in the criminal acts charged; especially where the government plans to call such persons as witnesses." *Rogers*, 617 F. Supp. at 1028. The failure to require such a bill of particulars would "guarantee prejudicial surprise to the defendant." *Id.* (quoting *United States v. Thevis*, 474 F. Supp. 117, 125 (N.D. Ga. 1979), a*ff'd*, 665 F.2d 616 (5th Cir. 1982)).

Many courts outside of this District have likewise required the government, particularly in complex cases, to provide a bill of particulars specifying whom the government contends participated in the charged conspiracy. *See, e.g.*, *United States v. Savin*, No. 00 CR. 45 (RWS), 2001 WL 243533, at *5 (S.D.N.Y. Mar. 7, 2001) (granting bill of particulars where "[t]he number of unindicted co-conspirators is potentially quite large," "[t]he conspiracy may have spanned up to six years," and "[t]he pretrial disclosure has been extraordinarily voluminous"); *see also United States v. Michel*, No. 19-cr-148-CKK, 2019 WL 5797669, at *17–18 (D.D.C. Nov. 6, 2019); *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 303 (S.D.N.Y. 2018); *United States v. Garcia*, No. 06-cr-26-JNEFLN, 2006 WL 1302270, at *8 (D. Minn. May 8, 2006); *United States v. Williams,* 113 F.R.D. 177, 178 (M.D. Fla. 1986).[2]

Mr. Blake would be faced with unfair surprise in having to defend against theories that he would not have had adequate opportunity to investigate if he is not provided with information identifying the individuals who are known to the Government and are unindicted co-conspirators.  The identity of these individuals may change the scope of the conspiracy dramatically.  Mr. Blake's ties to these individuals, or lack of ties to these individuals, are plainly relevant to his defense. *See Rogers*, 617 F. Supp. at 1028 (granting bill of particulars because it would "guarantee prejudicial surprise to the defendant if the government is allowed to produce

---

[2] In *United States v. Hajduk*, 370 F. Supp. 2d 1103, 1112–13 (D. Colo. 2005), the court denied the defendant's request for a bill of particulars, citing *United States v. Paiva*, 892 F.2d 148, 155 (1st Cir. 1989)).  In *Paiva*, the court denied a bill of particulars sought by the defendant because he was "unable to anticipate the government's witnesses" at trial.  892 F.2d at 155.  Here, Mr. Blake is not asking for a witness list, but merely a list of persons with whom the Government alleges Mr. Blake conspired.  *See*, *e.g.*, *United States v. Ramirez*, 54 F. Supp. 2d 25, 30 (D.D.C. 1999) (ordering bill of particulars identifying, *inter alia*, "names of all persons the government would claim at trial were co-conspirators (whether or not they will be called as trial witnesses)").

undisclosed, unknown members of the enterprise and its activities to testify against the defendant") (citation omitted). Further, the failure to identify co-conspirators can present double jeopardy concerns if the Government were later to seek to indict Mr. Blake because of an alleged conspiracy with the alleged unindicted co-conspirators; it would be unclear whether that conspiracy is distinct from the one charged in this case. *See*, *e.g.*, *United States v. Gallegos*, No. 4:16-CR-0434-AKK-JEO, 2017 WL 2374800, at *7 (N.D. Ala. Apr. 13, 2017), *report and recommendation adopted*, No. 4:16-CR-0434-AKK, 2017 WL 2351593 (N.D. Ala. May 31, 2017) (granting bill of particulars for the names of known, unindicted coconspirators because "[s]uch disclosure is required to ensure the defendant's double jeopardy rights are protected").

To be sure, a bill of particulars is not intended to be a discovery device. *Dunn*, 841 F.2d at 1029. Nor is it proper to use a bill of particulars as a means of obtaining the evidentiary details of the Government's case. *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983). Mr. Blake, however, seeks only an articulation of whom the Government *alleges* participated in the conspiracy, not discovery of the Government's evidence of this participation nor a preview of how the Government intends to prove that participation at trial.

## II. THE GOVERNMENT SHOULD BE REQUIRED TO IDENTIFY WHEN AND THROUGH WHOM IT ALLEGES MR. BLAKE JOINED THE CONSPIRACY AND THE OVERT ACTS IT ALLEGES WERE UNDERTAKEN IN FURTHERANCE OF THE CONSPIRACY BY MR. BLAKE.

The superseding indictment does not identify when and through whom Mr. Blake allegedly joined the conspiracy that the Government charges against him, and it is opaque as to Mr. Blake's connection to the alleged conspiracy. The Government should be required to provide this information so that Mr. Blake can adequately prepare his defense. *See Rogers*, 617 F. Supp. at 1029 (granting bill of particulars as to each defendant's alleged overt acts because

"[s]uch information is necessary for trial preparation and to avoid prejudicial surprise at trial; especially where the government seeks to hold defendants liable for the overt acts of alleged co-conspirators" (collecting cases)); *Ramirez*, 54 F. Supp. 2d at 30 (granting bill of particulars to specify when each defendant joined the conspiracy and each defendant's overt acts "so that each defendant may understand the government's view of his alleged role in the conspiracy"); *United States v. Aispuro*, No. CR08-2936 JB, 2010 WL 1404196, at *6 (D.N.M. Mar. 16, 2010) (same).

Courts have granted bills of particulars in Sherman Act cases requiring the government to disclose when and how a defendant allegedly joined a conspiracy. *See, e.g.*, *United States v. NL Indus., Inc.*, No. CIV. A. 89-346, 1989 WL 149210, at *2 (E.D. La. Nov. 30, 1989) (requiring the government to "provide the approximate dates that each defendant and unindicted co-conspirators entered and left the conspiracy alleged"); *United States v. Greater Syracuse Bd. of Realtors, Inc.*, 438 F. Supp. 376, 381 (N.D.N.Y. 1977) ("The Government is ordered to state, as precisely as they are able, when and through whom each defendant is alleged to have entered the conspiracy."); *United States v. Am. Oil Co.*, 259 F. Supp. 851, 855 (D.N.J. 1966) ("If, by the 'act' by which each conspirator joined the alleged conspiracy, the defendants mean a meeting of persons, or course of correspondence, or exchange of documents resulting in a combination, the information should be furnished. If, however, no such 'act' transpired, the Government should so state."); *United States v. Allegheny County R. Druggists' Ass'n*, 12 F.R.D. 249, 251 (W.D. Pa. 1952) (ordering bill of particulars specifying "the names of all officers of employees of any defendant who allegedly took part in any of the activities charged in the indictment" and "when each defendant joined the alleged conspiracy"); *United States v. Metro. Leather & Findings Ass'n*, 82 F. Supp. 449, 455 (S.D.N.Y. 1949) ("The government will also, in the bill to be served,

8

inform each corporate and individual defendant of the earliest date of any documentary proofs connecting or tending to connect each such corporate and individual defendant with the alleged conspiracy."). Courts have likewise granted bills of particulars requiring disclosure of when a defendant joined the alleged conspiracy in cases alleging conspiracies outside the context of the Sherman Act. *See, e.g.*, *Aispuro*, 2010 WL 1404196, at *6; *Ramirez*, 54 F. Supp. 2d at 30.

The superseding indictment lacks the specificity needed for Mr. Blake to understand the scope of the allegations against him and allow him to prepare his defense. While the superseding indictment provides cursory detail about a handful of telephone calls it alleges were made or received by Mr. Blake in furtherance of the conspiracy, Mr. Blake is not on notice of what other acts, if any, the Government alleged he took in furtherance of the alleged conspiracy. While the Government is not required in a Sherman Act conspiracy to allege overt acts in an indictment or prove an overt act at trial, if the Government does allege that Mr. Blake undertook overt acts in furtherance of the conspiracy, he is entitled to notice of such overt acts to avoid unfair surprise at trial and to permit him to prepare his defense.

Thus, while it is true that proving a Sherman Act § 1 claim does not require proof of an overt act, nonetheless, in Sherman Act cases, courts have granted bills of particulars that require the government to specify all overt acts that the government intends to prove at trial. *See, e.g.*, *Greater Syracuse Bd. of Realtors, Inc.*, 438 F. Supp. at 380 (collecting and, "in light of the anticipated complexity of this case," following a line of Sherman Act cases requiring specification of all overt acts to be proven at trial). This is because "a great majority of antitrust combination and conspiracy cases are presented, of necessity, by use of circumstantial evidence," which "usually is in the form of various overt acts performed in furtherance of the

9

agreement, or effects of the agreement, both of which lead to the inference that an agreement existed." *Id.* Requiring the government to disclose "all such acts to be proven at trial" is necessary "in order to allow for adequate defense preparation and to avoid unfair surprise." *Id.*; *see also United States v. Tedesco*, 441 F. Supp. 1336, 1343–44 (M.D. Pa. 1977) (requiring the government in a Sherman Act case to provide a bill of particulars "in relation to the substance of the agreement or combination").[3]

The Tenth Circuit has explained in the context of a Sherman Act case that "[a] bill of particulars was the proper avenue for greater factual detail" to "identify[] . . . which projects were alleged to be a direct part of the conspiracy involving defendants." *Mobile Materials*, 871 F.2d at 909. Although *Mobile Materials* was in the context of a challenge to the sufficiency of the indictment, the Tenth Circuit made clear that requiring a bill of particulars to specify the projects that allegedly were part of a bid-rigging scheme was appropriate. *See id.* (discussing with approval *United States v. Fischbach and Moore, Inc.*, 576 F. Supp. 1384, 1389 (W.D. Pa. 1983), which granted a bill of particulars "to allow the defendants to better prepare for trial").

A bill of particulars identifying overt acts is particularly warranted where an alleged Sherman Act conspiracy is complex. *See Fischbach & Moore, Inc.*, 576 F. Supp. at 1389 (in

---

[3] Specifically, *Tedesco* ordered the following particulars: "whether the alleged price fixing conspiracy included an agreement to maintain specified price differentials among different quantities, types or sizes of coal"; "whether the alleged price fixing conspiracy included an agreement to charge prices on a geographical basis"; "whether the alleged price fixing conspiracy included an agreement involving collusion in bidding"; and "whether all grades and sizes of coal were included in the alleged price fixing conspiracy, and if only some were, [] which ones." 441 F. Supp. at 1343–44.

case alleging a conspiracy lasting seven years and involving a "number of projects bid on over the seven-year period during which the conspiracy allegedly took place," a bill of particulars was required to identify "which contracts are alleged to be the subject of the conspiracy to allocate bids among defendants, having bid prices fixed, or for which noncompetitive, collusive and rigged bids were submitted, and/or on which defendants and co-conspirators refrained from bidding pursuant to the alleged conspiracy"); *see also Aispuro*, 2010 WL 1404196, at *6 (requiring bill of particulars in complex drug conspiracy case, requiring the government to provide a bill of particulars identifying the "overt acts for which it believes each Defendant is responsible" and "the date by which it either: (i) contends that each of the remaining Defendants joined the conspiracy; or (ii) the first time that the United States knew each Defendant was a part of the conspiracy"); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234–35 (S.D.N.Y. 2000) (in complex cases charging violations spanning decades that contain voluminous discovery, bill of particulars may be warranted to narrow the defendant's investigation, expedite preparation for trial, and allow a more efficient resolution of the matter). Where, as here, the alleged conspiracy involves a large number of alleged co-conspirators that was at least seven years in duration, involving multiple customers, prices, suppliers, and distributors, the factual complexity of this case seems obvious.[4]

---

[4] In its brief in opposition to the motions for bill of particulars filed by Defendants Penn and Austin, the Government contended that the case as originally indicted was "quite straightforward," because it "is about selling broiler chicken products—an activity with which the defendants themselves are intimately familiar." *See* Dkt. 68 at 7. That this case concerns the industry in which the defendants work hardly distinguishes this case from any other Sherman Act case. *See Greater Syracuse Bd. of Realtors, Inc.*, 438 F. Supp. at 379 ("it is no answer that the defendant should know the facts demanded, for the defendant is presumed to be innocent; in any event, the Bill of Particulars is aimed at the facts as alleged by the Government, rather than as

Again, Mr. Blake simply seeks to understand what the Government alleges that he did. Specifically, he seeks a bill of particulars identifying when and through whom the Government *alleges* he joined the conspiracy and what acts it *alleges* he undertook in furtherance of it. He is not seeking to learn how the Government intends to *prove* these allegations at trial and is not seeking discovery of the *evidence* on which the Government intends to rely in proving these allegations. He merely seeks precisely what he is entitled to receive by way of a bill of particulars: the specific *allegations* against him so he can prepare to defend against those allegations.

### III. THE PROVISION OF MILLIONS OF PAGES OF DISCOVERY DOES NOT OBVIATE THE NEED FOR A BILL OF PARTICULARS; IT MILITATES IN FAVORS OF REQUIRING ONE.

The Tenth Circuit has held that, in some circumstances, the government's provision of full discovery may obviate the need for a bill of particulars. *See United States v. Ivy*, 83 F.3d 1266, 1282 (10th Cir. 1996); *United States v. Kunzman*, 54 F.3d 1522, 1526 (10th Cir. 1995). These cases, however, do not hold that fulsome discovery obviates the need for a bill of particulars in every case. Such a rule would effectively override Rule 7(f) in all cases in which the government meets its discovery obligations (which, hopefully, is every case). It is not surprising therefore, that a district court within the Tenth Circuit has not read Tenth Circuit authority as precluding a bill of particulars when the government produces voluminous discovery and, indeed, has recognized as persuasive the long line of authority holding that voluminous

---

they actually exist"). Further, since the original indictment, the Government has alleged additional events and charged additional co-defendants in the superseding indictment, resulting in a ten-defendant, multi-year conspiracy that is, without doubt, factually complex.

discovery may increase the need for a bill of particulars. *See Aispuro*, 2010 WL 1404196, at *6 ("The Court also finds persuasive the Defendants' argument that, in a complex case with voluminous unorganized discovery, a bill of particulars is particularly necessary to avoid surprise at trial." (collecting cases)); *see also United States v. Michel*, No. CR 19-148-1 (CKK), 2019 WL 5797669, at *18 (D.D.C. Nov. 6, 2019) ("[I]t is not sufficient for the government to respond to a motion for a bill of particulars by pointing to the voluminous discovery already provided or by relying on a governmental open file policy."); *Bin Laden*, 92 F. Supp. 2d at 234 ("It is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars.").

Where the discovery provided is as extensive as it is here, the volume of the discovery weighs in favor of granting a bill of particulars. *See, e.g., United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (per curiam) (in case where the discovery consisted of about 4,000 documents, "[t]he Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged"); *United States v. Koschtschuk*, No. 09-CR-0096 (S) (M), 2010 WL 584018, at *13 (W.D.N.Y. 2010) (granting bill of particulars specifying the manner in which each defendant participated in the charged conspiracy where defendants were only named in one count of indictment involving many co-conspirators, the conspiracy alleged spanned a significant amount of time, and the government had produced an "enormous amount of discovery material"); *United States v. Wong*, No. CR 06-428 SI, 2007 WL 404807, at *2 (N.D. Cal. Feb. 2, 2007) (requiring the government to produce a bill of particulars where there was at least 150,000 pages of discovery and the case was

13

"factually and legally complex"); *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 944 (N.D. Ill. 2001) (although government had produced 17,000 pages of discovery and early disclosure of witness statements, summary charts, and an outline of the government's theory of the case, bill of particulars was warranted because "[t]here is no good reason to require the defendant to engage in guesswork to determine who the victims of the offense were, what bills the government will claim were false, and what tests it will claim were unnecessary"); *Savin*, 2001 WL 243533, at *3 (in case involving 100,000 pages of discovery, a bill of particulars was warranted because "[a]bsent further information, in order to adequately understand the nature of the charges against him, [the defendant] will be forced to comb through this veritable mountain of documents and to attempt to guess which of the numerous transactions documented therein, and conducted over a six-year period, are alleged by the government to have been improper").

In this case, the Government to date has provided over 12.7 *million* documents in discovery. Mr. Blake should not be left to guess based on his review of millions and millions of pages of documents when and how the Government alleges he joined the conspiracy and to speculate as to what conduct he undertook that the Government alleges was in furtherance of the charged conspiracy. The quintessential purpose of a bill of particulars is to put the defendant on notice so that he knows what the allegations against him are, and he need not guess what conduct he needs to defend at trial. This is precisely why the Government should be required to provide the bill of particulars that Mr. Blake seeks.

## CONCLUSION

The superseding indictment does not provide Mr. Blake sufficient notice of the allegations against him. It fails to identify the individuals and/or corporations with whom he

allegedly conspired; leaves him to guess when and through whom the Government alleges he entered into the charged conspiratorial agreement; and fails to specify the overt acts the Government alleges he undertook in furtherance of the conspiracy. The voluminous discovery—over 12.7 million documents—merely provides Mr. Blake the opportunity to guess at what these allegations are. The Government should be ordered to provide a bill of particulars to avoid unfair surprise at trial, allow Mr. Blake to pursue his own investigation and prepare a defense, and guard against double jeopardy concerns.

Date: November 30, 2020

*/s/ Wendy W. Johnson*
Wendy W. Johnson
RMP LLP
5519 Hackett Road, Suite 300
Springdale, Arkansas  72762
Telephone:  (479) 443-2705
Fax:  (479) 443-2718
wjohnson@rmp.law

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack
Jessica Arden Ettinger
Wendy Liu
ROBBINS, RUSSELL, ENGLERT, ORSECK,
 UNTEREINER & SAUBER LLP
2000 K Street N.W., 4th Floor
Washington, D.C.  20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
bpollack@robbinsrussell.com

*Counsel for Mr. Blake*

15

## CERTIFICATE OF SERVICE

On this 30th day of November, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Colorado by using the Court's CM/ECF system, which will serve electronic notification of this filing on all counsel of record.

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack
ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
2000 K Street N.W., 4th Floor
Washington, D.C. 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
bpollack@robbinsrussell.com

*Counsel for Mr. Blake*