# EXHIBIT A

AO 89B (07/16) Subpoena to Produce Documents, Information, or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| United States of America<br>v.<br>Jayson Jeffrey Penn, et. al.<br>*Defendant* | Case No. 20-cr-00152-PAB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CRIMINAL CASE

To: Pilgrim's Pride Headquarters, 1770 Promontory Circle, Greeley, CO 80634

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following books, papers, documents, data, or other objects:

The documents set forth in Attachment A.

| Place: Alfred A. Arraj United States Courthouse<br>Courtroom A701 - 901 19th Street<br>Denver, CO 80294 | Date and Time: 08/19/2021 5:00 am<br>Nick Richards, Courtroom Services<br>2nd Floor |
|---|---|

Certain provisions of Fed. R. Crim. P. 17 are attached, including Rule 17(c)(2), relating to your ability to file a motion to quash or modify the subpoena; Rule 17(d) and (e), which govern service of subpoenas; and Rule 17(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

*(SEAL)*

Date: 7/29/2021



*CLERK OF COURT*

s/*S. Phillips, Deputy Clerk*

*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Roger Born Austin , who requests this subpoena, are:

Michael Feldberg; Reichman Jorgensen Lehman & Feldberg LLP - New York, 750 Third Avenue, 24th Floor, New York, NY 10017; mfeldberg@reichmanjorgensen.com; tel: 212-381-4970; fax: 212-381-4971

**Notice to those who use this form to request a subpoena**

Before requesting and serving a subpoena pursuant to Fed. R. Crim. P. 17(c), the party seeking the subpoena is advised to consult the rules of practice of the court in which the criminal proceeding is pending to determine whether any local rules or orders establish requirements in connection with the issuance of such a subpoena. If no local rules or orders govern practice under Rule 17(c), counsel should ask the assigned judge whether the court regulates practice under Rule 17(c) to 1) require prior judicial approval for the issuance of the subpoena, either on notice or ex parte; 2) specify where the documents must be returned (e.g., to the court clerk, the chambers of the assigned judge, or counsel's office); and 3) require that counsel who receives produced documents provide them to opposing counsel absent a disclosure obligation under Fed. R. Crim. P. 16.

Please note that Rule 17(c) (attached) provides that a subpoena for the production of certain information about a victim may not be issued unless first approved by separate court order.

Case No. 1:20-cr-00152-PAB Document 1354-4 (Ex. Redacted) Filed 07/30/21 USDC Colorado pg 3 of 12
Case 1:20-cr-00152-PAB Document 854 filed 03/15/21 USDC Colorado pg 3 of 12
Page 2 of 2

AO 89B (07/16) Subpoena to Produce Documents, Information, or Objects in a Criminal Case (Page 2)

Case No. 20-cr-00152-PAB

# PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# **ATTACHMENT A**

<u>Definitions</u>

1. All terms are to be interpreted according to the normal and ordinary use of those terms unless otherwise defined herein.  All terms are to be interpreted in as inclusive a manner as possible.

2. "DOCUMENT" means any kind of written, typewritten, printed, graphic, or recorded material or electronically stored information, including but not limited to notes, calendars, memoranda, letters, electronic mail, reports, analyses, telegrams, publications, CONTRACTS, audio or video recordings, transcriptions of audio or video recordings, business records, magnetically encoded information, and electronically stored compilations, and includes, without limitation, originals, drafts, working papers, and similar materials, and each and every non-identical copy, whether different from the original because of stamps, indications of the recipient(s), handwritten notes, marks, attachments, or for any other reason.

3. "COMPANY" means a business entity of any kind, including any related entities, predecessors, successors, subsidiaries, parent companies, or affiliates and the executives, employees, partners, members, owners, directors, officers, attorneys, agents, or other representatives of the entity and any related entities.

4. "PRICE" means a cost, worth, value, rate, fee, fare, toll, bill, expense, due, valuation, charge, or any element that makes up a cost, either monetary or otherwise.

5. "BID" means an offer, quote, submission, proposal, or proposition, relating to a PRICE offered.

6. "BROILER CHICKEN PRODUCTS" means any products, items, merchandise, stock, or yield related to chicken.

7. "CONTRACT" means any formal or informal agreement or any formal or informal modification thereto to purchase or sell BROILER CHICKEN PRODUCTS or otherwise conduct business with CHICKEN PURCHASERS.

8. "CHICKEN PURCHASER" means any individual or COMPANY that negotiates for, purchases, procures, buys, trades for, pays for, or otherwise acquires BROILER CHICKEN PRODUCTS directly from a COMPANY that manufactures or produces those products, either individually or collectively as a purchasing cooperative; including, but not limited to, the following companies:

    a. RSCS
    b. KFC

    c. SMS
    d. POPEYES
    e. GOLDEN CORRAL
    f. CHURCH'S
    g. SYSCO
    h. JOHN SOULES FOODS
    i. CHICK-FIL-A
    j. COSTCO

9. "YOU" and "YOUR" means PILGRIM'S PRIDE.

10. "PILGRIM'S PRIDE" means Pilgrim's Pride Corporation and any related companies, predecessors, successors, subsidiaries, parent companies or affiliates and the executives, employees, partners, members, owners, directors, officers, attorneys, agents, or other representatives of the company and any related companies.

11. "JBS USA" means JBS USA Holdings, Inc. and any related companies, predecessors, successors, subsidiaries, parent companies or affiliates and the executives, employees, partners, members, owners, directors, officers, attorneys, agents, or other representatives of the company and any related companies.

12. "RSCS" means Restaurant Supply Chain Solutions, LLC, formerly known as Unified Foodservice Purchasing Co-op, Inc. or UFPC, and any related companies, predecessors, successors, subsidiaries, parent companies or affiliates and the executives, employees, partners, members, owners, directors, officers, attorneys, agents, or other representatives of the company and any related companies.

13. "KFC" means Kentucky Fried Chicken Corporation and any related companies, predecessors, successors, subsidiaries, parent companies or affiliates and the executives, employees, partners, members, owners, directors, officers, attorneys, agents, or other representatives of the company and any related companies.

14. "SMS" means Supply Management Services, Inc. and any related companies, predecessors, successors, subsidiaries, parent companies or affiliates and the executives, employees, partners, members, owners, directors, officers, attorneys, agents, or other representatives of the company and any related companies.

15. "POPEYES" means Popeyes Louisiana Kitchen, Inc. and any related companies, predecessors, successors, subsidiaries, parent companies or affiliates and the executives, employees, partners, members, owners, directors, officers, attorneys, agents, or other representatives of the company and any related companies.

16. "GOLDEN CORRAL" means Golden Corral Corporation and any related companies, predecessors, successors, subsidiaries, parent companies or affiliates and the executives,

employees, partners, members, owners, directors, officers, attorneys, agents, or other representatives of the company and any related companies.

17. "CHURCH'S" means Church's Fried Chicken, Inc. and any related companies, predecessors, successors, subsidiaries, parent companies or affiliates and the executives, employees, partners, members, owners, directors, officers, attorneys, agents, or other representatives of the company and any related companies.

18. "SYSCO" means Sysco Corporation and any related companies, predecessors, successors, subsidiaries, parent companies or affiliates and the executives, employees, partners, members, owners, directors, officers, attorneys, agents, or other representatives of the company and any related companies.

19. "JOHN SOULES FOODS" means John Soules Foods, Inc. and any related companies, predecessors, successors, subsidiaries, parent companies or affiliates and the executives, employees, partners, members, owners, directors, officers, attorneys, agents, or other representatives of the company and any related companies.

20. "CHICK-FIL-A" means Chick-fil-A, Inc. and any related companies, predecessors, successors, subsidiaries, parent companies or affiliates and the executives, employees, partners, members, owners, directors, officers, attorneys, agents, or other representatives of the company and any related companies.

21. "COSTCO" means Costco Wholesale Corporation and any related companies, predecessors, successors, subsidiaries, parent companies or affiliates and the executives, employees, partners, members, owners, directors, officers, attorneys, agents, or other representatives of the company and any related companies.

22. "DEPARTMENT OF JUSTICE" means the United States Department of Justice, including its Antitrust Division and all of its attorneys and other employees.

23. "FBI" means the Federal Bureau of Investigation and includes all of its special agents and other employees.

24. "AUDITOR" means the public accounting firm or firms that conducted or are conducting the audit of the financial statements of PILGRIM'S PRIDE for the years 2016 through 2021, including those financial statements filed with the U.S. Securities and Exchange Commission.

25. "PLEA AGREEMENT" means that document titled "Plea Agreement" and all of its substantive terms, dated February 16, 2021, between PILGRIM'S PRIDE and the DEPARTMENT OF JUSTICE, and filed in Case No. 1:20-cr-00330-RM in the United States District Court for the District of Colorado on February 23, 2021.

3

26. "relating to" means concerning, describing, evidencing, supporting, discussing, consisting of, referring to, reflecting on, embodying, dealing with, or being in any way legally, factually, or logically connected with the referenced matter.

27. The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the words "all," "each," and "any" mean "any and all"; and the word "including" means "including without limitation."

4

Instructions

1. YOU are required to submit all DOCUMENTS in YOUR custody and control responsive to this subpoena on or before August 19, 2021 at 5:00 am to Nick Richards, Courtroom Services, Second Floor in the United States District Court for the District of Colorado located at:

   Alfred A. Arraj United States Courthouse
   901 19th Street
   Denver, CO 80294

2. All DOCUMENTS submitted to the Court pursuant to this subpoena will be reviewed *in camera* prior to being disseminated to the parties to the above-captioned case. All DOCUMENTS provided to the parties will be subject to the current protective order in this case imposing limitations on dissemination of information to third parties.

3. The requests herein shall be deemed to request the production of any and all DOCUMENTS and things within the actual or constructive possession, custody, or control of PILGRIM'S PRIDE. These requests require you to produce DOCUMENTS and things that are stored in any physical location or may be stored electronically on any media, including on any personal computers, mobile telephones, tablets, servers, telephones, or other electronic devices in your possession, custody, or control. This includes without limitation personal emails and text messages.

4. Each request is to be construed independently, and no request is to be viewed as limiting the scope of any other request. If you assert that any part of a request is objectionable, respond to the remaining parts of the request to which you do not object.

5. The DOCUMENTS are to be produced as they are kept in the usual course of business or organized and labeled to correspond with the requests in this subpoena. The gathering and processing of DOCUMENTS from electronic media files and other sources is to be performed in such a manner as to ensure that the files or other source from which the document is obtained may be identified.

6. Produce the entirety of any requested DOCUMENT, including all related attachments, enclosures, cover letters or emails, memoranda, exhibits, or appendices. Copies that differ in any respect from an original (because, by way of example only, handwritten or printed notations were added) should be treated as separate DOCUMENTS and produced separately. Each draft of a DOCUMENT should be treated as a separate DOCUMENT and produced separately.

7. To the extent possible, produce originals of DOCUMENTS. If producing copies, produce DOCUMENTS in color if the document is not just black and white.

5

8. Any DOCUMENT maintained or stored electronically, including any DOCUMENT stored as electronic data on magnetic, optical, or other storage media as "active" or "backup" files, shall be produced in a manner that maintains the integrity and readability of all data, including all metadata.

9. If information stored in, or accessible through, computer or other data retrieval systems is produced, it must be accompanied with instructions, software or computer code, and all other materials necessary to use or interpret such data.

10. In the event a known responsive DOCUMENT or portion thereof is withheld for any reason, indicate the following information for each such withheld DOCUMENT, or portion thereof:

    a. the date of the DOCUMENT;
    b. the general character of the DOCUMENT (*i.e.*, letter, memorandum, or notes, etc.);
    c. the identity of the person in possession of the DOCUMENT and the DOCUMENT'S location (either current or last known);
    d. the identity of the author of the DOCUMENT;
    e. the identity of all recipients of the DOCUMENT;
    f. all persons not employed by PILGRIM'S PRIDE, including the DEPARTMENT OF JUSTICE, the FBI, or the AUDITOR, to whom the document or any information recorded in the document has been disclosed;
    g. any and all dates on which the information included in the documents was disclosed to any person other than an officer or director of PILGRIM'S PRIDE by PILGRIM'S PRIDE or any agent;
    h. the general subject matter of the DOCUMENT; and
    i. the reason, including, but not limited to, any legal obligation or privilege for withholding the DOCUMENT or portion thereof.

Requests

Unless otherwise specified, all requests relate to documents created during or that relate to the period January 1, 2012 through December 31, 2019:

1. All BIDS or CONTRACTS for the sale or purchase of BROILER CHICKEN PRODUCTS.

2. All purchase orders for the sale or purchase of BROILER CHICKEN PRODUCTS between PILGRIM'S PRIDE and other suppliers of BROILER CHICKEN PRODUCTS.

3. All DOCUMENTS relating to any PRICE increase for BROILER CHICKEN PRODUCTS sold to COSTCO.

4. All DOCUMENTS containing or reflecting organizational charts sufficient to identify reporting lines, groups, divisions, and company leadership.

5. All DOCUMENTS containing or reflecting any employment related documents, including, but not limited to, employment contracts, compensation and bonus information, stock grants, key performance indicators, performance metrics, performance evaluations, or training (whether required or attended), and employee handbooks for the following individuals:

   a. Jayson Penn
   b. William "Bill" Lovette
   c. Roger Austin
   d. Jimmie Little
   e. Jason McGuire
   f. Justin Gay
   g. Tim Stiller
   h. Scott Tucker

6. All DOCUMENTS containing or reflecting expense reports, calendar entries, or performance evaluations for Roberto "Beto" Esteves for the period of January 1, 2010 through the end of his employment by PILGRIM'S PRIDE.

7. All communications with the DEPARTMENT OF JUSTICE or FBI from September 2, 2016 onward relating to BROILER CHICKEN PRODUCTS, the PLEA AGREEMENT, or any of Jayson Penn, William "Bill" Lovette, Roger Austin, or Jimmie Little.

8. All DOCUMENTS containing, reporting on, documenting, or reflecting any communications, meetings, presentations, proffers, or discussions between the DEPARTMENT OF JUSTICE and PILGRIM'S PRIDE from September 2, 2016 onward relating to BROILER CHICKEN PRODUCTS, the PLEA AGREEMENT, or any of

7

    Jayson Penn, William "Bill" Lovette, Roger Austin, Jimmie Little, Jason McGuire, Justin Gay, Tim Stiller, or Scott Tucker.

9. All DOCUMENTS containing, reporting on, documenting, or reflecting any communications, meetings, presentations, proffers, or discussions between the AUDITOR from September 2, 2016 onward relating to BROILER CHICKEN PRODUCTS, any investigation by the DEPARTMENT OF JUSTICE or the FBI, any alleged or potential violation of the U.S. antitrust laws, or any of Jayson Penn, William "Bill" Lovette, Roger Austin, Jimmie Little, Jason McGuire, Justin Gay, Tim Stiller, or Scott Tucker.

10. All DOCUMENTS disclosed to, delivered to, or described to the DEPARTMENT OF JUSTICE or the FBI from September 2, 2016 onward related to the bidding, sale, or pricing of BROILER CHICKEN PRODUCTS, any investigation by the DEPARTMENT OF JUSTICE or the FBI, any alleged or potential violation of the U.S. antitrust laws, or any of Jayson Penn, William "Bill" Lovette, Roger Austin, Jimmie Little, Jason McGuire, Justin Gay, Tim Stiller, or Scott Tucker; presented in the form and in the same compilation as disclosed to, delivered to, or described to the DEPARTMENT OF JUSTICE or the FBI; Other than documents Bates-labeled

    a. PILGRIMS-DOJ-0000000001 through PILGRIMS-DOJ-0003114724
    b. PILGRIMS-0000000001 through PILGRIMS-0010495741
    c. PEI-000001 through PEI-001077
    d. PILGRIMS-ATR001-000000001 through PILGRIMS-ATR002-000000001
    e. PILGRIMS_SD_00880 through PILGRIMS_SD_01431

11. All DOCUMENTS containing or reflecting records of any investigation, review, fact-finding, or analysis, including interviews of any person, conducted by PILGRIM'S PRIDE from September 2, 2016 onward related to the bidding, sale, or pricing of BROILER CHICKEN PRODUCTS, any investigation by the DEPARTMENT OF JUSTICE or the FBI, any alleged or potential violation of the U.S. antitrust laws, or any of Jayson Penn, William "Bill" Lovette, Roger Austin, Jimmie Little, Jason McGuire, Justin Gay, Tim Stiller, or Scott Tucker.

12. DOCUMENTS sufficient to establish the date of Jimmie Little's separation from PILGRIM'S PRIDE and any announcements or notices regarding Jimmie Little's separation from PILGRIM'S PRIDE.

# DECLARATION
# FILED UNDER SEAL

1. I have undertaken a review of all DOCUMENTS (as defined in Attachment A) in my possession, custody and control, or in the possession, custody and control of PILGRIM'S PRIDE responsive to the subpoena.

2. True and correct copies of DOCUMENTS responsive to the subpoena are included herewith.

3. Other than the DOCUMENTS produced herein or described in the privilege log submitted with this declaration, I know of no other DOCUMENTS responsive to the subpoena.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed at _____ on _____, _____.

_____

9