**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY R. MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     GARY BRIAN ROBERTS,
10.   RICKIE PATTERSON BLAKE,

       Defendants.

---

## DEFENDANTS' OBJECTIONS TO JURY TRIAL PROTOCOLS

---

Defendants, by and through their respective counsel, respectfully file their Objections To

the United States Court for the District of Colorado's Jury Trial Protocols (the "Protocols"),

effective as of August 9, 2021.  Defendants also respectfully object to other protocols as set forth

below and request the Court make accommodations consistent with the objection.

## **INTRODUCTION**

As a threshold matter, Defendants acknowledge the severity of the Covid-19 pandemic

and the recent spread of the Delta variant.  They therefore do not challenge the vast majority of

the Protocols.  They do, however, object to seven specific procedures and requirements: (1)

requiring or permitting jurors to wear obstructive masks while they are speaking during voir dire; (2) requiring or permitting witnesses to wear obstructive masks during their testimony; (3) providing witnesses with the option to testify via video teleconference ("VTC"); (4) requiring unvaccinated jurors to sit in the gallery and permitting any juror to opt to sit in the gallery; (5) excluding certain unvaccinated potential jurors; (6) configuring the courtroom so that government counsel have their backs to the jury in close proximity to the box, which would allow jurors to see the government's computer screens; and (7) closing the courtroom to the public's physical presence during voir dire and trial.

A jury trial is set to commence on October 25, 2021.  On August 9, 2021, the Court adopted the Protocols.  In addition, at the September 2, 2021 hearing, the Court suggested additional protocols for trial.  This case is set for a pretrial conference on October 8, 2021, at which time the Protocols will be further discussed.

I.      **THE REQUIREMENT THAT PROSPECTIVE JURORS WEAR MASKS DURING VOIR DIRE VIOLATES DEFENDANTS' SIXTH AMENDMENT AND DUE PROCESS RIGHTS TO AN IMPARTIAL JURY.  PROSPECTIVE JURORS SHOULD TAKE DOWN THEIR MASKS BRIEFLY WHEN THEY ARE SPEAKING OR WEAR CLEAR PLASTIC FACE SHIELDS.**

The Constitution doubly guarantees Defendants the right to trial "by an impartial jury." *See* U.S. Const. amend. VI; *Ristaino v. Ross*, 424 U.S. 589, 595, n.6 (1976) ("Principles of due process also guarantee a defendant an impartial jury.").  That twice-inscribed right is fundamental; it requires "a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).  To effectuate that right, the parties and Court must be able to assess prospective jurors' potential prejudices during jury selection.  *See Ristaino*, 424 U.S. at 594; *United States v. Smith*, 919 F.3d 825, 934 (4th Cir. 2019) (right

requires a trial judge "to remain ever watchful to prevent prejudicial occurrences"); *see also Gomez v. United States*, 490 U.S. 858, 873 (1989) (jury selection is the primary means of ensuring that the jury is free from a predisposition about defendants' culpability).

"[D]emeanor plays . . . an important part" in that assessment. *Ristaino*, 424 U.S. at 595 (internal quotations omitted); *accord United States v. Sutton*, 732 F.2d 1483, 1493 (10th Cir. 1984); *see also, e.g., Smith*, 919 F.3d at 835 (affirming trial judge's excusal of jurors whose "demeanor" "suggested they could not be fair and impartial"). Therefore, it is unsurprising that "[l]eading treatises in the area" emphasize the importance of "nonverbal communication." *Uttecht v. Brown*, 551 U.S. 1, 9 (2007) (citing V. Starr & M. McCormick, Jury Selection 389–523 (3d ed.2001) and J. Frederick, Mastering Voir Dire and Jury Selection 39–56 (2d ed.2005)); *see United States v. Walker*, 772 F.2d 1172, 1179 (5th Cir. 1985) ("facial expressions" "may convey much more to the trier of facts than do the spoken words") (quotations omitted).

The Protocol requiring that "[a]ll potential jurors, whether vaccinated or unvaccinated, must wear masks during the jury selection process," Protocols, at 1, violates Defendants' constitutional right to an impartial jury. Because all prospective jurors – both vaccinated and unvaccinated – are required to wear masks during jury selection, neither the Court nor the parties will be able to adequately access their demeanor. For example, while the Court and parties will be able to hear prospective jurors' answers during voir dire, they will not be able to see smiles, smirks, frowns, or pursed lips – all of which are essential to nonverbal communication. *See Uttecht*, 551 U.S. at 9; *Walker*, 772 F.2d at 1179.

The Court, therefore, should at a minimum require potential jurors to briefly take down their masks when speaking during voir dire or in the alternative to wear clear plastic face shields

that allow observers to see potential jurors' faces.  This is necessary to ensure that Defendants

receive a fair trial.  *See* U.S. Const. amend. VI; *Ristaino*, 424 U.S. at n.6.  Further, it is

anticipated that jurors will be seated in every-other seat, further distancing themselves from each

other and reducing risk of potential Covid-19 exposure.

## II.     ANY REQUIREMENT THAT WITNESSES WEAR MASKS DURING THEIR TESTIMONY OR PROVIDE TESTIMONY BY VTC VIOLATES DEFENDANTS' SIXTH AMENDMENT RIGHT TO FACE-TO-FACE CONFRONTATION AND FIFTH AMENDMENT RIGHT TO DUE PROCESS.

The Sixth Amendment likewise ensures that "[i]n all criminal prosecutions, the accused

shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend

VI; *see also* U.S. Const., amend. V.  The "core of the values" enshrined by that right is the need

for "face-to-face confrontation."  *Maryland v. Craig*, 497 U.S. 836, 847 (1990); *see also Coy v.*

*Iowa*, 487 U.S. 1012, 1017 (1988) ("There is something deep in human nature that regards face-

to-face confrontation between accused and accuser as essential to a fair trial in a criminal

prosecution.") (internal quotations omitted).  "[F]ace-to-face confrontation enhances the

accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent

person."  *Craig*, 497 U.S. at 847.  "The combined effect of . . . physical presence, oath, cross-

examination, and observation of demeanor by the trier of fact[] serves the purposes of the

Confrontation Clause by ensuring that evidence admitted against an accused is reliable and

subject to the rigorous adversarial testing that is the norm of Anglo–American criminal

proceedings."  *Id.* at 846.

The right to confrontation is not subject to "open-ended exceptions from the

confrontation requirement . . . developed by the courts."  *Crawford v. Washington*, 541 U.S. 36,

54 (2004).  Instead, the Confrontation Clause "admit[s] only those exceptions established at the

time of the founding." *Id.* And the only exceptions to the right to confrontation recognized by the Framers were for witnesses who were "unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* In a decision before *Crawford*, the Supreme Court in *Craig*, opened the door to other rare exceptions to confrontation where "to further an important public policy and only where the reliability of the testimony is otherwise assured," relying on an even earlier precedent in *Ohio v. Roberts*. *Craig*, 497 U.S. at 850 (citing 448 U.S. 56, 64 (1980)). *Crawford*, however, overruled the *Roberts* decision upon which *Craig* relied. 541 U.S. at 63-65. By requiring that all witnesses "must testify in the courtroom with masks or via VTC from another location in the courthouse without a mask" except that, "in the discretion of the judicial officer, fully vaccinated witnesses may testify without masks," the Protocol violates a faithful reading of *Crawford*. Protocols, at 3. The Framers would not have recognized witnesses testifying in another room at the courthouse as unavailable, and thus excused from the Confrontation Clause. Further, the very purpose of the confrontation clause – "face-to-face confrontation," *Craig*, 497 U.S. at 847 – is undercut when the witnesses' faces are hidden behind a mask.

Courts have recognized that testimony by video was "not a viable alternative due to [the defendant's] Confrontation Clause rights." *U.S. v. Casher*, 2020 WL 3270541, at *2 (D. Mont. June 17, 2020). The *Casher* Court stated that the "potential risks COVID-19 poses do not present a necessity to forego [the defendant's] confrontation rights." *Id*. at *3. *See also U.S. v. Pangelinan*, 2020 WL 5118550, *4 (D. Kan. Aug. 31, 2020) (denying the government's motion to permit testimony by video based on Covid-19 risks where witnesses had "some health issues" but there was "no evidence that they are physically unable to travel"); *U.S. v. Kail*, 2021 WL

1164787, at *1 (N.D. Cal. Mar. 26, 2021) (risk of Covid-19 did not outweigh defendant's confrontation right; court will "locate people as far from the witness stand as practically possible during" testimony).

Likewise, the Government has acknowledged that masks covering witnesses' noses and mouths will affect the jury's ability to assess credibility.  In *United States v. Robertson*, the Government conceded that "assessing the credibility of each witness is a core jury task that a cloth facemask does meaningfully affect."  2020 WL 6701874, at *1 (quoting Dkt. 249 at 2). And in *United States v. Crittenden*, the Government warned that "the jury may find it difficult to gauge facial reactions to questions posed by counsel" for witnesses wearing masks.  No. 4:20-CR-7 (CDL), Dkt. 38 (M.D. Ga. Aug. 12, 2020).   District Courts have reached the same conclusion.  *United States v. Young*, 2020 WL 3963715, at *2 (D. Colo. July 13, 2020) (requiring witnesses to "wear masks that cover their face" may prejudice defendants because juries may be unable "to clearly observe witness reactions to assess credibility"); *see also* Order Regarding Protocols For Jury Selection And Trial, *United States of America v. Timothy Bernard Tanner*, No. 3:19-CR-245-M (N.D. Tex. May 28, 2020) (witnesses to testify without masks) (attached hereto as **Exhibit A)**.  These aspects of the Protocol cannot survive *Crawford*.

Since a witness who cannot appear in the courtroom for face to face cross-examination may not testify without violating the confrontation clause, such a witness is unavailable for trial. There is only one vehicle for admitting the testimony of a witness unavailable for trial, the vehicle approved in *Crawford*.  A party may move to take the deposition of an unavailable witness pursuant to Rule 15.  *Crawford*, 541 U.S. at 54.  Such a deposition would be in person, socially distanced as necessary and without masks, allowing face to face confrontation.

Alternatively, if the Court concludes that *Craig* remains in force despite *Crawford*, the Protocol goes beyond what *Craig* allowed in the name of public policy.   While preventing the spread of Covid-19 certainly is an important public policy, the denial of Defendants' rights to face-to-face confrontation is not necessary to further that public policy.  In the large ceremonial courtroom, 201," the witness stand is sufficiently placed in the courtroom and of a distance, that potential exposure is minimal at best, considering CDC guidelines. No mask is necessary.  Nor is virtual testimony.

If the Court wishes to provide greater protection, plastic face shields can be provided for all witnesses and/or plexiglass placed around the witness.  *See Robertson*, 2020 WL 6701874, at *1 (noting that "[a]n unimpeded opportunity to cross-examine adverse witnesses face-to-face and in full view of the jury is core to the Sixth Amendment right to confrontation," and requiring witnesses to wear clear plastic face shields rather than masks).

The Court should require witnesses to testify without masks and in the courtroom to ensure that Defendants receive a fair trial in conformance with their Fifth and Sixth Amendment rights, providing whatever protections to the witness and others that can be provided consistent with Defendants' constitutional rights.  If a witness is unavailable to testify in person, the witness' testimony may be preserved through Rule 15.

## III.   REQUIRING OR PERMITTING ANY JURORS TO SIT IN THE COURTROOM GALLERY WILL VIOLATE DEFENDANTS' FIFTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL.

The Protocols provide that unvaccinated jurors will be required to sit in the courtroom gallery and that any juror may opt to sit in the gallery.  Protocols, at 2.  As noted in *Young*, however, requiring jurors to sit in the gallery behind counsel would result in a "miscarriage of

justice." *Young*, 2020 WL 3963715, at *2.  It will "diminish the jury's ability to assess the

presentation of evidence" and interfere with the Defendants' ability to "assess the reaction of

jurors to the evidence." *Id*.  Sitting in the gallery will likely make jurors feel alienated from the

trial process and adversely affect their attention spans and ability to hear and assess the evidence.

It also will make it practically impossible for counsel to address or even see all jurors at once and

will require counsel to question witnesses with their backs to some jurors.  For these reasons,

requiring or permitting jurors to sit in the gallery during trial will violate Defendants' Fifth

Amendment due process rights to a fair trial.

## IV.    EXCLUSION OF CERTAIN UNVACCINATED POTENTIAL JURORS VIOLATES DEFENDANTS' SIXTH AMENDMENT AND JURY SELECTION ACT RIGHT TO A JURY THAT IS A FAIR CROSS-SECTION OF THE COMMUNITY.

"The Sixth Amendment secures to criminal defendants the right to be tried by an

impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v.

Smith*, 559 U.S. 314, 319 (2010); *see also United States v. Orange*, 447 F.3d 792, 797 (10th Cir.

2006) (same).  "To establish a prima facie violation of the fair-cross-section requirement . . . a

defendant must prove that: (1) a group qualifying as 'distinctive' (2) is not fairly and reasonably

represented in jury venires, and (3) 'systematic exclusion' in the jury-selection process accounts

for the underrepresentation." *Berghuis*, 559 U.S. at 327 (quoting *Duren v. Missouri*, 439 U.S.

357, 364 (1979) (jury-selection process allowing women to opt out of service violated Sixth

Amendment)).  Similarly, the Jury Selection Act provides that "[i]t is the policy of the United

States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and

petit juries selected at random from a fair cross section of the community in the district or

division wherein the court convenes."  28 U.S.C. § 1861; see also 28 U.S.C. § 1862 (specifically

prohibiting exclusion "on account of race, color, religion, sex, national origin, or economic status").

The Protocol providing that "potential jurors will be contacted and screened for factors that would automatically excuse them from service" including "[b]eing unvaccinated and being recognized by the CDC as a person at higher risk for severe illness from COVID-19," Protocol at 1, is likely to violate both the Jury Selection Act and defendants' Sixth Amendment right to a jury drawn from a fair cross section of the community. While the Protocol does not specify what is meant by being "recognized by the CDC as a person at higher risk for severe illness from COVID-19" it appears to refer to a CDC webpage entitled "People with Certain Medical Conditions."[1] That page states:

> •      Older adults are more likely to get severely ill from COVID-19. More than 80% of COVID-19 deaths occur in people over age 65, and more than 95% of COVID-19 deaths occur in people older than 45.

> •      Long-standing systemic health and social inequities have put various groups of people at increased risk of getting sick and dying from COVID-19, including many racial and ethnic minority groups and people with disabilities.

*Id.* It also lists cancer, chronic kidney disease, chronic lung disease, dementia, diabetes, down syndrome, heart conditions, HIV, immunocompromised state, liver disease, obesity, pregnancy, smoking, organ or blood stem cell transplant, stroke, and substance use disorders. *Id.*

---

[1]  Online at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Aug. 20, 2021).  To the extent that the CDC continues to update this page, the import of the Protocol is subject to change at any time.

If the Protocol is being applied to automatically exclude unvaccinated "older adults" (whether defined as being over 65 or over 45) and racial and ethnic minority groups and people with disabilities, it likely will lead to violations of the Jury Selection Act and Sixth Amendment. *See Holland v. Illinois*, 493 U.S. 474, 478-80 (1990) ("It has long been established that racial groups cannot be excluded from the venire from which a jury is selected."); *United States v. Shinault*, 147 F.3d 1266, 1271-72 (10th Cir. 1998) (government concession that "Asians, Blacks, and Hispanics are all distinctive groups"); *United States v. Gault*, 141 F.3d 1399, 1402 (10th Cir. 1998) (government concession that "Hispanics, Native Americans and African Americans are distinct groups"); *United States v. DiTommaso*, 405 F.2d 385, 391 (4th Cir. 1968) ("A community cross-section, however, will invariably contain a broad representation of individuals of various ages.").

Even if the Protocol is only being applied to screen out unvaccinated individuals with one of the listed medical conditions, it still is likely to lead to violations of the Jury Selection Act and Sixth Amendment. The expansive list of medical conditions will sweep in a high percentage of the unvaccinated—for example, over 24% of adult Coloradans are obese[2] and over 13% smoke cigarettes.[3]  Applying these exclusions will systematically exclude unvaccinated jurors from the jury pool. While defendants are unaware of any court to address the issue, the unvaccinated

---

[2]  *See* CDC, *Adult Obesity Prevalence Maps*, online at
https://www.cdc.gov/obesity/data/prevalence-maps.html.

[3] *See* CDC, *Extinguishing the Tobacco Epidemic in Colorado*, online at
https://www.cdc.gov/tobacco/stateandcommunity/state-fact-sheets/colorado/index.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Ftobacco%2Fabout%2Fosh%2Fstate-fact-sheets%2Fcolorado%2Findex.html.

should be seen as a "distinctive" group given that being unvaccinated is correlated with political leanings, education, and views on issues of public concern.[4]  *See Thiel v. Southern Pac. Co.*, 328 U.S. 217, 220 (1946) (explaining that "prospective jurors shall be selected by court officials without systematic and intentional exclusion" of "economic, social, religious, racial, political and geographical groups of the community").  Vaccination rates in Colorado are also lower among certain minority groups, which also have higher incidence rates of the medical conditions listed by the CDC. For example, the vaccination rates among African Americans (roughly 57%) and Hispanics (roughly 46%) in Colorado are lower than the state average (76%)[5], while the obesity prevalence among those groups (roughly 31% for both African Americans and Hispanics) in Colorado are higher than the state average (roughly 24%).[6]  The result is that the Protocol will also systematically exclude certain racial minorities from the jury pool.

    To ensure that the jury is drawn from sources representing a fair cross-section of the community, the Court should amend the Protocol to remove the automatic exclusion of unvaccinated individuals with certain medical conditions. In the alternative, and at a minimum,

---

[4]  *See* Kaiser Family Foundation, *KFF Vaccine Monitor: July 2021* (Aug. 4, 2021), online at https://www.kff.org/coronavirus-covid-19/poll-finding/kff-covid-19-vaccine-monitor-july-2021/ (reporting that unvaccinated more likely to be Republican, not have a college degree, and believe that the seriousness of the coronavirus has been exaggerated).
[5]  See Colorado Department of Public Health & Environment, Colorado COVID-19 Vaccination Data (Sep. 19, 2021), online at https://www.kff.org/coronavirus-covid-19/poll-finding/kff-covid-19-vaccine-monitor-july-2021/. Vaccination rates for minority groups calculated by multiply overall vaccination rate times percent of vaccines administered to minority group and dividing by percent of minority group in overall population.

[6] *See* CDC, *Adult Obesity Prevalence Maps*, online at https://www.cdc.gov/obesity/data/prevalence-maps.html.

the Court should clarify that unvaccinated "older adults" and racial minorities will not be excluded from the jury pool.

## V.   THE COURT MUST CONFIGURE THE COURTROOM SO THAT THE JURY CANNOT SEE THE GOVERNMENT'S ATTORNEYS' COMPUTERS.

The current proposed configuration of counsel tables at trial will result in the government's computers facing jurors.  This also will interfere with Defendants' rights to a fair trial.  Amongst other documents, jurors may be able to see inadmissible evidence on the government's computer screens or witness examination outlines and questions.  The Court, therefore, must configure the courtroom so that the jury cannot see the government's computers, or in the alternative, require the government to have privacy screen covers over the monitors.

## VI.   EXCLUDING THE PUBLIC FROM THE COURTROOM VIOLATES DEFENDANTS' FIRST AND SIXTH AMENDMENT RIGHTS TO A PUBLIC TRIAL

Defendants have the right to a public trial, including during *voir dire*.  *See Presley v. Georgia*, 558 U.S. 209, 213 (2010) (right during voir dire); *Press-Enter. Co. v. Superior Court of Calif., Riverside Cty.*, 464 U.S. 501, 505 (1984) (First Amendment right); *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (Sixth Amendment right).  The Protocols provide that the public will be excluded from the courtroom during *voir dire* and may be excluded during the remainder of the trial if jurors are in the gallery and "the presence of . . . spectators interfere" with proceedings. Protocols, at 3.

The Court must make individualized findings that closure of the gallery will not impede on Defendants' rights to a public trial.  *United States v. Addison*, 708 F.3d 1181, 1187 (10th Cir. 2013).  Partial closure is only proper if there is a "substantial interest" in closure to preserve

higher values and the closure is "narrowly tailored to specific needs." *United States v. Galloway*, 937 F.2d 542, 545-46 (10th Cir. 1991).

The Court has not made individualized findings of fact related to the planned partial closure. *See United States v. Johnson*, Case No. 1:21CR123, 2021 WL 3011933, at *1-2 (N.D. Ohio July 16, 2021) (making individualized findings in support of partial closure based on a general order); *Strommen v. Larson*, OP 20-0327, 2020 WL 3791665, at *3 (Sup. Ct. Mont. July 7, 2020); *see United States v. Huling*, C.A. No. 1:19-cr-00037-MSM-PAS, 2021 WL 2291836, at *2 (D.R.I. June 4, 2021) (upholding partial closure based on individualized finding that "[c]urrent spacing for necessary social distancing . . . does not allow space for spectators").

During the trial itself, unlike during *voir dire*, there will not be a large number of prospective jurors. While it is possible that there will be a limited number of seats in the courtroom available to the public, there is no reason why the Courtroom should be closed to the public entirely during trial.[7]

---

[7] If the Court makes individualized findings that the Courtroom needs to be closed to the public entirely during *voir dire*, the failure to provide a video feed for the public, but rather, as the Jury Protocols dictate, providing only an audio feed, is not a "narrowly tailored" alternative. Rather, a two-way live video feed should be provided to ameliorate the trial's partial closure so that "those interested will have an opportunity to observe—and be observed by—those participating in the trial." *United States v. Babichenko*, 508 F. Supp. 3d 774, 778 (D. Idaho 2020); *Huling*, 2021 WL 2291836, at *2 (narrowly tailored alternative is a closed-circuit, live video and audio feed); *Strommen*, 2020 WL 3791665, at *3 ("the public will, at a minimum, be able to remotely view the proceedings in [defendant's] case live and in real time").

Dated:  October 1, 2021

Respectfully submitted,

s/ John A. Fagg, Jr.
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

s/ Richard K. Kornfeld
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

s/ Bryan Lavine
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

s/ James A. Backstrom
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

s/ Craig Allen Gillen
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

s/ Michael F. Tubach
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

s/ Michael S. Feldberg
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

s/ Elizabeth Prewitt
Elizabeth B. Prewitt
LATHAM & WATKINS LLP-DC
Attorney for Timothy R. Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

s/ Mark A. Byrne
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

s/ Barry J. Pollack
Barry J. Pollack
Attorney for Rickie Patterson Blake
ROBBINS, RUSSELL, ENGLERT,
ORSECK, & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of October, 2021, I electronically filed the foregoing **DEFENDANTS' OBJECTIONS TO JURY TRIAL PROTOCOLS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Erin Holweger*
Erin Holweger