IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY R. MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

Defendants.

**DEFENDANTS' RESPONSE TO THE UNITED STATES' MOTION *IN LIMINE*
REGARDING SUMMARY EVIDENCE**

       Defendants through undersigned counsel, respectfully submit this Response to the United States' Motion *in Limine* Regarding Summary Evidence.

**I.    INTRODUCTION**

       Before the Court is a motion submitted by the government, in which the government seeks to circumvent its burden of proof by proving the entirety of its case against Defendants via summary evidence. In essence, the government proposes that it be permitted to introduce into evidence an artificial, contorted, and out-of-context road map of cherry-picked emails, calls, and texts to weave together a story that no single witness or combination of witnesses could testify to—or be confronted about—at trial. Such an attempt flies in the face of Rule 1006—which merely allows parties to summarize voluminous records to assist the jury, and which is *not* intended to allow a party to introduce various types of records all at once through a summary witness—as well as Defendants' constitutional rights to confront witnesses against them at trial.

There is no way to disguise such an attempt as anything other than a preliminary closing argument whereby the government would be permitted to display choice pieces of evidence organized in a particular way to present a narrative to the jury that was entirely invented by the prosecutors in this case. While there is a place for summary charts at trial, such evidence cannot be used to fill a glaring gap in testimony by disguising argument for evidence.

## II.  BACKGROUND

Following the *James* hearing on September 2 and 8, 2021, Defendants submitted their supplemental *James* briefs. (*See* Docs. 461-478.) In his supplemental brief filed on September 13, 2021, Mr. Mulrenin correctly predicted that, in the absence of any direct evidence or witness against Mr. Mulrenin, the government would seek to admit "all of the proffered statements [admitted] under Rule 801(d)(2)(E)" "though a Rule 1006 summary witness, essentially re-enacting much of the case agent's presentation to grand jury appearances and in the *James* hearing, and referring to some version of the government's Guide." (Doc. 477 at 4.) That this is precisely the government's strategy is now undeniable, the consequences of which—as explained below—if allowed by this Court would not only be to deny Defendants of their right to confront the evidence against them, but also would prejudicially lump them together with wholly unrelated conduct.

On October 1, 2021, the government submitted its Motions *in Limine*, seeking to admit, in part, summary exhibits and testimony that would "summarize a large number of phone records and business documents such as chicken supply contracts, business-related correspondence, and emails and text messages over the span of several years maintained by the defendants' employers, their customers, and phone utility providers to facilitate the efficient presentation of trial evidence." (Doc. 542 at 9.) The government stated that in particular, these exhibits "will provide basic information about ***the key events*** in the defendants' conspiracy" and that they will

2

have "content similar to the Conspiracy Guide that the government used as part of the *James* hearing." (*Id.* at 10 (emphasis added).)  The Conspiracy Guide referenced by the government is essentially a road map of the government's case-in-chief, misleadingly stitching together emails and concurrent phone records to suggest that Defendants' communications over the superseding indictment period were criminal, and is without any context that inconveniently cuts against the prosecution's narrative, which is abundant.  (*See* Doc. 358-1, amended at Doc. 380-1.)  The government stated that it will introduce such evidence "during the direct examination of two law-enforcement case agents." (Doc. 542 at 10.)  The government states that "[o]ne agent will testify about the conspiracy's actions directed toward increasing prices to KFC and other customers" and "[t]he other agent will testify about other conspiratorial events." (*Id.* at 10-11.)

The government also seeks to exclude evidence regarding "[t]he government's deliberative processes and charging decisions," which includes evidence related to the Antitrust Division's Leniency Program, (*id.* at 13,) of which Tyson Foods is an applicant.  *See* Press Release, Tyson Foods, Tyson Foods' Statement on Department of Justice Indictment in Broiler Chicken Investigation (June 10, 2020), https://ir.tyson.com/news/news-details/2020/Tyson-Foods-Statement-on-Department-of-Justice-Indictment-in-Broiler-Chicken-Investigation/default.aspx.  In support of its motion to exclude such evidence, the government stated that it "does not expect to call any witness at trial who have benefitted from the Division's Leniency Program, and therefore, the credibility of any government witness receiving leniency in this or a related case is not an issue." (*Id.* at 13.)  In other words, the government conceded that it will not call any current Tyson employees at trial.[1]  Although Tyson employee Carl Pepper has

---

[1] As detailed in Defendants' Motion *in Limine* to Exclude Evidence About Tyson Foods' Leniency Application and Conditional Agreement with the DOJ, Tyson's agreement with the DOJ pursuant to the Leniency Application provides conditional immunity for "covered employees"—essentially all current Tyson employees save for Carl Pepper. (Doc. 533 at 2-3.)

3

been carved out of any conditional immunity conferred by virtue of Tyson's leniency application, he has indicated his intention to assert his Fifth Amendment right against self-incrimination. (*See* Declaration of Cal Pepper, dated September 7, 2021 (Defs.' *James* Ex. A-033).)

### III. LEGAL STANDARD

Federal Rule of Evidence 1006 permits summary exhibits "to prove the content of voluminous writings…that cannot be conveniently examined in court," provided that the underlying documents are otherwise admissible. Fed. R. Evid. 1006; *United States v. Channon*, 881 F.3d 806, 811 (10th Cir. 2018); *United States v. Irvin*, 682 F.3d 1254, 1262 (10th Cir. 2012) (holding that the district court erred as a matter of law in admitting charts by the government summarizing transactions under Rule 1006 where the trial court did not require the government to lay the necessary foundation); *United States v. Samaniego,* 187 F.3d 1222 (10th Cir. 1999). Summary charts admitted under Rule 1006 are "explicitly intended to reflect the contents of the documents they summarize and typically are substitutes in evidence for the voluminous originals." *United States v. Milkievicz*, 470 F.3d 390, 398 (1st Cir. 2006). Interpretations of information that go beyond "simple compilation of voluminous records," on the other hand, are impermissible. *State Office Sys., Inc. v. Olivetti Corp. of America*, 762 F.2d 843, 845-46 (10th Cir. 1985) (finding that projections of lost profits contained in summary exhibits were not admissible under Rule 1006).

4

IV.    ARGUMENT

    A.    **The Government Seeks to Admit Summary Evidence Which Would Constitute An Impermissible "Interpretation" of the Underlying Evidence**

By seeking to introduce summary evidence similar to the Conspiracy Chart, the government aims to cure several core deficiencies of its case-in-chief.[2] Aware of these critical deficiencies, the government now seeks to compile and admit into evidence summary evidence, such as a chart containing "basic information about the key events in the defendants' conspiracy." (Doc. 542 at 10.) But such summary evidence would not pass Rule 1006 muster. As a threshold matter, even if the underlying documents that the government relies on are individually admissible as a record of regularly conducted business under FRE 803(6), highlighting a subset of business records as "key events" in an alleged conspiracy would amount to an impermissible "interpretation" of the underlying documents. Indeed, the Conspiracy Guide cited by the government as an example of the summary evidence it seeks to admit simply contains cherry-picked snippets of emails without context, as well as selective phone calls misleading placed alongside those email excerpts. Such selectivity is inherently and unavoidably an interpretation of the underlying documents—it picks out what portions of emails are significant and noteworthy, and which phone calls are related to the charged conspiracy. In the case of Tyson, the summary evidence would do so without a single Tyson witness that could testify as to what a particular email meant, what occurred during a particular phone call, or otherwise corroborate any interpretations outlined in the summary evidence.

---

[2] As it relates to Mr. Mulrenin and Mr. Roberts specifically, these deficiencies currently are that: (1) there are no witnesses to testify to the participation of Mr. Mulrenin or Mr. Roberts in the charged conspiracy; (2) there are no documents showing that Mr. Mulrenin or Mr. Roberts agreed to fix prices or rig bids; and (3) there is no evidence that anyone at Tyson shared Tyson's final prices with competitors before they were submitted to a customer.

5

Even the case law recognized by the government as persuasive and authoritative on this matter holds that such interpretations of underlying documents in summary exhibits cannot be admitted under Rule 1006. *See Olivetti*, 762 F.2d at 845. *Olivetti* explicitly recognizes that "a summary of business records should not be admitted if it mischaracterizes or inaccurately reflects the documents it purports to summarize." *Id.* at 846; *see also U.S. v. Groysman*, 766 F.3d 147, 156 (2d Cir. 2014) (finding plain error where the trial court admitted summary exhibits that "contained inaccurate and misleading information," and did not "summarize 'voluminous writings, recordings, or photographs,'" but rather summarized hearsay evidence offered through a testifying agent).

While the government submits that "any agent interpretation of those documents will be removed," (Doc. 542 at 10,) it fails to specify *how* that can be possible. Certainly, if the agent testimony at trial resembles anything close to Agent Taylor's testimony at the *James* hearing, then it is sure to be laden with interpretations of what communications and phone calls on the Conspiracy Guide meant and/or how such communications furthered the charged conspiracy. Moreover, the agent would not need to explicitly testify as to his interpretations since such interpretations would be implicit in the chart itself by virtue of the information included and how it is organized. In particular, when the government has conceded that it does not plan to call any Tyson witnesses, if permitted to introduce the proposed summary evidence, it is hard to believe that the government would refrain from eliciting agent testimony that amount to interpretations that communications and phone records involving Mr. Mulrenin and Mr. Roberts furthered the conspiracy's objectives. This would be improper, and the government should be barred from introducing summary evidence on this basis alone.

6

B.  **The Admission of a Summary Chart Such As the Government's Conspiracy Guide Would be Significantly Prejudicial**

Given the weaknesses in the government's case against Defendants, the government attempts to move this Court to allow it to submit summary evidence through agent testimony in an effort to bootstrap innocuous communications to seemingly conspiratorial conduct by other alleged co-conspirators. This is clear when attention is paid to the number of times Mr. Mulrenin and Mr. Roberts appear in the Conspiracy Guide, for example. Out of 260 "Conspiratorial Acts," Mr. Mulrenin and Mr. Roberts are implicated on just 27 entries combined, many of which are seemingly innocuous, even within the misleading context manufactured by the government. (*See, e.g.,* Doc 380-1 at rows 95, 97, 98, 101, 150-152.) Further, the Conspiracy Guide woefully and misleadingly underrepresents the true volume of relevant calls and communications that occurred over the course of the indictment period. For example, the Conspiracy Guide is devoid of any references to bids or RFPs submitted that are not part of the government's case-in-chief, of which there are dozens, if not hundreds.

The level of selectivity that the government has shown in stitching together Defendants' communications goes far beyond what the Tenth Circuit has deemed admissible in summary charts used in complex accounting or tax fraud cases. *See United States v. Thompson*, 518 F.3d 832, 859 (10th Cir. 2008) (explaining that summaries are often admissible in tax cases under Rule 1006 "because tax cases often require the presentation of substantial and complex documentation and the technical analyses of these materials by tax experts"); *United States v. Samaniego*, 187 F.3d 1222, 1223 (10th Cir. 1999). The communications to be evaluated by the jury in this instance are phone calls, texts, and email messages that could be readily understood in their original form by the jury—not deposit slips, bank records, or wire transfer receipts to bank accounts that would be "incomprehensible to the jury without summarization." *Thompson*,

7

518 F.3d at 860.  Further, whereas a summary chart of purely financial records may assist the jury decide issues of tax evasion or mail fraud, *see, e.g.*, *United States v. Schuler*, 458 F.3d 1148, 1155 (10th Cir. 2006), there is far more danger than value in summary evidence in a price fixing case like this one where the government's skewed presentation of evidence could display an artificial "meeting of the minds" to fix prices among multiple parties.

Further still, allowing such summary evidence and agent testimony would give the government multiple opportunities at what amounts to a closing statement.  Indeed, the government has indicated that it plans to call *two* agents to speak to the summary exhibit(s) outlining the "key events" in its case-in-chief, which would effectively give the government not two, but ***three*** opportunities to summarize through agent testimony the communications and events it deems to be "key" in this case.  Such a move would be highly prejudicial to Defendants and cannot be permitted.

      **C.**      **The Admission of a Summary Chart Such As the Government's Conspiracy Guide Runs Afoul of Defendants' Rights to Confront Witnesses Against Them**

Finally, Defendants' constitutional rights require that they have the opportunity to confront witnesses against them, not a narrative artificially concocted by the government.  U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him"); *Crawford v. Washington*, 541 U.S. 36, 42 (2004). Allowing the government to not only side-step its evidentiary burden at trial, but also remove the ability of Defendants to adequately challenge the evidence against them by cross-examining witnesses, would raise serious constitutional concerns, and cannot be permitted.  *Id.* at 51 ("[T]he principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examination as evidence against the accused.")

8

## V.  CONCLUSION

For the forgoing reasons, the Court should deny the government's Motion *in Limine* Regarding Summary Evidence.

Dated: October 5, 2021

Respectfully submitted,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ Elizabeth Prewitt*
Elizabeth B. Prewitt
LATHAM & WATKINS LLP
Attorney for Timothy Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

*s/ James A. Backstrom*
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

*s/ Mark A. Byrne*
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

9

| | |
|---|---|
| *s/ Craig Allen Gillen*<br>Craig Allen Gillen<br>GILLEN, WITHERS & LAKE, LLC<br>Attorney for Gary Brian Roberts<br>400 Galleria Parkway, Ste. 1920<br>Atlanta, GA 30339<br>(404) 842-9700<br>cgillen@gwllawfirm.com | *s/ Barry J. Pollack*<br>Barry J. Pollack<br>Attorney for Rickie Patterson Blake<br>ROBBINS, RUSSELL, ENGLERT,<br>ORSECK, & UNTEREINER LLP<br>2000 K Street N.W., 4th Floor<br>Washington, DC 20006<br>(202) 775-4514<br>bpollack@robbinsrussell.com |
| *s/ Marci G. LaBranche*<br>Marci G. LaBranche<br>STIMSON STANCIL LABRANCHE HUBBARD LLC<br>Attorney for Timothy R. Mulrenin<br>1652 Downing Street<br>Denver, CO 80218<br>(720) 689-8909<br>labranche@sslhlaw.com | |

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 5th day of October, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

*s/ Nancy Hickam*
Nancy Hickam
