# Exhibit 3

## Defendants' Instruction No. 1

## Substantive Preliminary Instruction Before Trial

All of the defendants are charged in Count One with knowingly joining and participating in a single conspiracy to suppress and eliminate competition by fixing prices and other price-related terms and rigging bids in violation of Section 1 of Title 15 of the United States Code, commonly known as the Sherman Antitrust Act. Defendant Jimmie Little is also charged in Count Two with making false statements in violation of Section 1001(a)(2) of Title 18 of the United States Code, and in Count Three with obstruction of justice in violation of Section 1512(c)(3) of Title 18 of the United States Code. Let me remind you at the outset that the charges themselves are not evidence, and should be considered in deciding whether the government has proved each of the defendant's guilt or any element of the offense.

It is most important to understand that none of the defendants has to prove his innocence or present any evidence during the course of this trial. The government has the exclusive burden of proving each defendant guilty beyond a reasonable doubt, and this burden remains on the government alone throughout every stage of the trial and during your deliberations on the verdict. If the government fails to meet its burden as to any defendant, you must find that defendant not guilty.

You must presume each defendant innocent unless and until the government proves his guilt beyond a reasonable doubt, and you must separately consider the evidence against each defendant.

In order to prove each defendant is guilty of violating the Sherman Act, the government must establish each of the following elements beyond a reasonable doubt as to each defendant:

3

*First*, the government must prove that beginning at least as early as 2012 and continuing until at least early 2019, there was a single conspiracy in which persons illegally agreed to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products sold in the United States;

*Second*, each defendant knowingly—that is, voluntarily and intentionally—became a member of the charged conspiracy, knowing that the object of the agreement was to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products sold in the United States;

*Third*, the agreement was one that would unreasonably restrain trade; and

*Fourth*, that the alleged conspiracy occurred within the flow of, or substantially affected, interstate commerce.

The mere fact that competitors exchanged information, even regarding price, without more does not establish an agreement to fix prices or rig bids. It is not illegal for a competitor to obtain, rely upon, and act on pricing and other information received from competitors, customers, distributors, media, internet sources, industry analysts, brokers, and others involved in the production and sale of broiler chicken products so long as there is no agreement to rig bids or fix prices or other price related terms.

Similarly, the mere fact that the companies that employed defendants may have engaged in similar or parallel pricing does not, by itself, establish the existence of an unlawful agreement among them. Evidence of similarity of business practices by the employers of defendants, or the fact that the companies that employed them may have charged identical or similar prices for the same goods, does not alone establish an agreement to fix prices, since such activities may be

4

consistent with ordinary and proper competitive behavior in a free and open market. Businesses may lawfully copy each other's price lists, follow and conform exactly to each other's price policies and price changes, recognize that they have shared economic interests and, consequently, adopt the same prices, conditions of sale, or other practices, as long as they do so independently and not as part of an unlawful agreement to fix prices.

In determining whether such an agreement existed, you should consider whether, to the extent competitors engaged in similar or parallel pricing, the different persons adopting similar practices did so because of their own judgment about what was in their company's own best economic interest. In deciding this, you may consider whether the practices employed made sense in light of the industry conditions, and whether the benefits from those practices were dependent on other competitors doing the same thing. In short, you must find that those engaged in similar actions were acting together because of an unlawful agreement, rather than individual competitors acting in their own best interest who happen to have done the same thing.

Nevertheless, you may consider facts and circumstances of information exchanges and parallel pricing along with all other evidence in determining whether the alleged conduct resulted from the independent acts or business judgment of the defendants or the companies that employed them freely competing in the open market, or whether it resulted from an unlawful agreement among or between two or more of them to rig bids or fix prices.

Once again, defendants are presumed innocent and the rights of each of the defendants in this case are separate and distinct. You must separately consider the evidence against each defendant and return a separate verdict for each at the end of trial.

5

**Authority**: Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 16, 22 (modified); L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions §§ 58-3, 58-8, 58-12.1 (2018 ed.) (modified); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978) ("The exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive. For this reason, we have held that such exchanges of information do not constitute a per se violation of the Sherman Act."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-54 (2007) ("conscious parallelism" is "a common reaction of firms in a concentrated market [that] recogniz[e] their shared economic interests and their interdependence with respect to price and output decisions" and "does not establish the contract, combination, or conspiracy required by Sherman Act § 1" (quotations omitted)); *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999) ("While consciously parallel behavior may contribute to a finding of antitrust conspiracy, it is insufficient, standing alone, to prove conspiracy. . . . Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the information exchange."); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 475 (10th Cir. 1990) (holding that instruction that "'it is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or discuss common aims or objectives or exchange information on independently derived prices' . . . adequately state[s] the law of conspiracy and agreement"); Tr. at 2461:6-9, *United States v. Usher*, 17-cr-00019 (S.D.N.Y. Nov. 8, 2018), Doc. 239 ("People responding to common perceptions of the market may take independent actions

6

that are similar or parallel. But parallel conduct alone is not sufficient to prove an illegal agreement."); Jury Instructions, *United States v. Swanson*, No. 4:06-cr-00692-PJH (N.D. Cal. Mar. 10, 2008), Doc. 337 at 24 ("It is not in itself unlawful for competitors to engage in price coordination. Price coordination occurs when competitors recognize that they have shared economic interests and, consequently, follow each other's conduct in setting prices."); Tenth Circuit Criminal Pattern Jury Instruction 1.21 (2021, ed.) (modified).

7