IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br> v. <br> JAYSON JEFFREY PENN, *et al.*, <br><br> Defendants. | No. 20-cr-00152-PAB |

### MR. BLAKE'S TRIAL BRIEF

Mr. Blake was a salesman at George's for over 20 years. The Government has charged him with conspiracy to rig bids and fix prices of various chicken products from 2012 to 2019, but as this Court ruled in its Order after the *James* hearing, the Government, even relying on hearsay, has not shown by a preponderance of the evidence that Mr. Blake joined the alleged conspiracy before October 24, 2016. The Court's ruling that the Government had demonstrated by a preponderance that Mr. Blake was a member of the conspiracy as of October 24, 2016, was based on the fact that, on that date, Chris Sharp of distributor Kelly Foods emailed Mr. Blake "detailed information for all of the competitors" and, therefore, Mr. Blake "received and was in possession of pricing information for George's competitors" as of that date. ECF No. 559 at 20.

The Court did not address the type of "pricing information" Mr. Blake received from Mr. Sharp, however. This information was not about the bids that any competitor intended to submit in response to a request for proposal ("RFP") for 2017. Rather, it was a list of prices that competitors were charging under existing, fully executed contracts for 2016. *See* Gov't Trial Exhibit 6090 (Oct. 24, 2016 email from Sharp to Blake reflecting prices for Oct. 11-29, 2016). Knowing the competitors' current or past prices did not inform Mr. Blake what George's

1

competitors would be bidding in response to RFPs or allow him to participate in any effort to align or rig such bids; nor is simply having knowledge of competitors' current or past prices evidence of an intent to align or rig bids.

At the *James* hearing, the Government failed to present evidence that Mr. Blake ever received information from competitors about what they intended to bid in response to RFPs, and Mr. Blake believes no such evidence will be presented at trial. Nor is there evidence that he shared with competitors what George's intended to bid. The evidence at trial will show that Mr. Blake did not have authority to decide what George's would bid in response to RFPs, did not convey what competitors intended to bid to his superiors who decided what George's would bid, and indeed could not have done so because he did not know what competitors intended to bid. Despite his possession of information about competitors' current and past prices, there is no evidence Mr. Blake conspired to align or rig bids.

I. **EVIDENTIARY ISSUES LIKELY TO ARISE AT TRIAL**

  A. **Evidence of conduct by Mr. Blake prior to October 24, 2016**

Through its evidence proffered at the *James* hearing, the Government failed to prove that Mr. Blake was a member of the charged conspiracy prior to October 24, 2016. (ECF No. 559 at 20; ECF No. 595). Accordingly, much, if not all, of the evidence the Government intends to introduce at trial regarding conduct by Mr. Blake prior to that date should not be admitted against Mr. Blake. Such evidence is not relevant to prove the allegations against Mr. Blake in the superseding indictment. *See* Fed. R. Evid. 402.

For example, the Government will seek to introduce telephone records that demonstrate Mr. Blake communicated with competitors prior to October 24, 2016. Although the Government

possesses no recordings of these calls, the Government will ask the jury to infer that the communications were nefarious and in furtherance of the alleged conspiracy. There is, however, no evidentiary basis from which the jury could reasonably make this inference. Indeed, Agent Taylor conceded that these competitors lawfully communicated for reasons unrelated to the alleged conspiracy. The jury would simply be invited to speculate that information about bids was exchanged in those calls, as opposed to the calls being for another business purpose.

As another example, in its 404(b) notice, the Government asserted that handwritten notes (allegedly written by Mr. Blake) containing contact information for suppliers from which George's purchased chicken and to which George's sold chicken are admissible against Mr. Blake. These documents date from 2010 and 2011. *See* Gov't Trial Exhibits 9127, 9128. Thus, not only do these documents date from five or six years prior to the time the Government has adduced any evidence Mr. Blake joined the conspiracy, they also predate the conspiracy itself, which the superseding indictment alleges began "at least as early as 2012." ECF No. 101 at ¶ 1.

Even if arguably relevant, this evidence should be excluded under Rule 403 because it would cause extreme prejudice. As explained in Defendants' Combined Response to the Government's Motions for Pre-Trial Rulings Regarding the Authentication of Evidence (ECF No. 643), relevant evidence that otherwise satisfies an applicable hearsay exception may still be excluded at trial if "its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This is true even if that evidence is otherwise admissible as a business record or other exception to the hearsay rule. *See United States v. Rogers*, 556 F.3d 1130, 1137 (10th Cir. 2009). Evidence of conduct by Mr. Blake that predates any

3

evidence that he was a member of the alleged conspiracy is irrelevant, lacks probative value, is unduly prejudicial, invites speculation, and will confuse the jury.

### B.   Exchanges of current or historical prices

Sharing and receiving pricing information of competitors is not violative of the Sherman Act. *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978); *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1357 (9th Cir. 1982) ("[T]he mere exchange of price information … is not per se illegal."). Indeed, "[i]t makes common sense to obtain as much information as possible of the pricing policies and … strategy of one's competitors." *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999).

In any event, the only information Mr. Blake obtained and shared involved current or historical prices. *Todd v. Exxon Corp.*, 275 F.3d 191, 211-12 (2d Cir. 2001) (exchange of historical price data is less likely to implicate conspiracy because it has less potential to affect future prices). While such evidence could be relevant if there were evidence that Mr. Blake somehow used this information to align George's bids in response to a RFP for future business with the bids of George's competitors, the Government has no such evidence. There is no evidence Mr. Blake ever exchanged a bid that George's was submitting in response to a RFP for future business with any of its competitors. Nor is there evidence he received such information or passed it on to his superiors who made bidding decisions.

### C.   Evidence about George's not linked to Mr. Blake

Mr. Blake also anticipates that the Government will attempt to prove its case against him by pointing to evidence regarding his employer, George's, that is not connected to Mr. Blake. At the *James* hearing, for example, Agent Taylor testified that Brenda Ray of Pilgrim's received

4

pricing information from George's. In cross-examination, it became apparent Ms. Ray received this information from another George's employee, not Mr. Blake, whom she did not know. At the *James* hearing, the Government did not even attempt to prove anyone at George's other than Mr. Blake was a co-conspirator.

By including references to George's generally to imply Mr. Blake was part of a conspiracy, the Government paints with too broad a brush. While George's could be vicariously liable for actions taken by Mr. Blake, the converse is not true. *See Ghandi v. Police Dep't of City of Detroit*, 823 F.2d 959, 963–64 (6th Cir. 1987) (rejecting "reverse *respondeat superior* doctrine"); *Hernandez v. Gates*, 100 F. Supp. 2d 1209, 1218 n.13 (C.D. Cal. 2000) (individual cannot be held liable based on colleagues' decisions). An employee is not liable for the actions of its employer, even if they had knowledge of the employer's actions. *See Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998). Mr. Blake is not responsible for the actions of other employees of George's. Absent evidence linking George's actions to Mr. Blake, such evidence is irrelevant under Rule 402 and unduly prejudicial under Rule 403.

### D. Handwritten notes and documents

The Government has made clear its intention to offer into evidence handwritten notes and documents that it alleges were authored by Mr. Blake. *See* ECF No. 501. Mr. Blake intends to object to the introduction of these documents at trial because, among other reasons, the Government will not be able to prove the handwritten notes and documents contain statements made by Mr. Blake. *See* Fed. R. Evid. 801 ("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person *intended* it as an assertion.").

In any event, the handwritten documents show nothing other than the phone numbers of employees of other suppliers and information about other suppliers' current or historical prices. There is no basis from which a jury could reasonably infer that those documents—which predate the earliest there is any evidence Mr. Blake allegedly joined the conspiracy, and, indeed, predate the alleged conspiracy altogether—establish that Mr. Blake knowingly joined the charged conspiracy to align bids. At best, these documents invite the jury to speculate and should be excluded under Rules 402 and 403.

### E. Summary exhibits

The Government has indicated that it intends to seek to introduce what it characterizes as summary exhibits. Based on drafts the Government has provided defense counsel, these documents do not, however, merely summarize voluminous data. Instead, they use misleading and argumentative headings to characterize non-voluminous data, cherry-picking from that data. These documents, if stripped of the misleading and argumentative material, could potentially be permissible demonstrative exhibits; they are not admissible summary exhibits under Rule 1006.

### F. Potential *Bruton* Issues

The Government's exhibit list includes certain 302's and other memoranda of interviews with codefendants and alleged coconspirators. *See* ECF No. 593. The Court cannot admit these statements as evidence of Mr. Blake's alleged involvement in the conspiracy unless Mr. Blake is given the opportunity to cross-examine the declarants.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right… to be confronted with the witnesses against him." U.S. Const. amend. VI. The admission of a non-testifying co-defendant's statement implicating

another defendant violates the latter's Sixth Amendment Confrontation Clause protection because it deprives the defendant of the right to cross-examine the declarant. *See Bruton v. United States*, 391 U.S. 123, 124-26 (1968). Accordingly, any attempt by the Government to introduce statements by non-testifying codefendants or alleged coconspirators constitutes a violation of Mr. Blake's Sixth Amendment rights.[1]

## II.   THE EVIDENCE AGAINST MR. BLAKE DOES NOT ESTABLISH THE *PER SE* VIOLATION ALLEGED AND FAILS UNDER THE RULE OF REASON.

For the reasons explained above, the Government will not be able to prove Mr. Blake knowingly and intentionally joined a conspiracy to rig bids or fix prices. At most, the Government may be able to show that Mr. Blake shared current or historical pricing information from George's or its competitors, which fails as a matter of law to establish a *per se* violation of the Sherman Act. *See Gypsum*, 438 U.S. at 441-43 (exchanges of price information are not *per se* unlawful).

If the case against Mr. Blake can survive a Rule 29 motion, it must be assessed by the jury under the rule of reason. The Government's case against Mr. Blake cannot meet that test because the Government cannot establish that Mr. Blake's conduct was anticompetitive. The superseding indictment alleges a 7-year conspiracy beginning in 2012 and continuing until 2019. Of the four episodes that refer to Mr. Blake, only one occurred after October 24, 2016: "Popeye's 8-Piece COB Supply for 2018 and 2019." ECF No. 101 ¶¶ 136-43. And the allegations in those paragraphs reflect a competitive negotiation resulting in a price *decrease* from prior years.[2]

---

[1] In addition, the Government seeks to introduce additional documents—including emails and text messages—between codefendants or other alleged coconspirators. While these statements may not be testimonial, Mr. Blake believes the admission of such statements without the opportunity to cross-examine presents similar Confrontation Clause issues.

[2] Mr. Blake is mentioned only once in this episode, with respect to a single call with Tyson's employee Carl Pepper—an unindicted coconspirator. ECF No. 101 ¶ 142. No testimony was

Notably, the Government alleges Kent Kronauge, a buyer for Popeye's, requested bids from Tyson, George's, Mar-Jac and others, and further requested a reduction in prices relating to those bids. The superseding indictment alleges that the price reduction George's bid was 25% less than its competitors' reductions for 2018 and 50% more for 2019. *Id*. ¶¶ 141-43. These bids reflect a competitive bidding process entirely divorced from the historical prices possessed by Mr. Blake.

## CONCLUSION

Much of the evidence the Government will seek to introduce at trial against Mr. Blake predates any evidence that he was a member of the charged conspiracy. Even the evidence from a relevant timeframe consists largely of phone calls with no evidence as to their content, exchanges of current or historical prices with no evidence that this information was used to align or rig bids in response to RFPs for future contracts, and generalized references to George's with no evidence tying the communication or conduct to Mr. Blake. Mr. Blake anticipates objections to the admissibility of this evidence under Rules 402 and 403. In addition, Mr. Blake anticipates objections to summary exhibits the Government may seek to introduce.

Date:  October 18, 2021

/s/ Barry J. Pollack
Barry J. Pollack
ROBBINS, RUSSELL, ENGLERT,
 ORSECK & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, D.C.  20006
Telephone: (202) 775 4500
bpollack@robbinsrussell.com

Respectfully submitted,

/s/ Wendy L. Johnson
Wendy L. Johnson
RMP LLP
5519 Hackett Street, Suite 300
Springdale, Arkansas 72762
Telephone: (479) 443-2705
wjohnson@rmp.law

---

adduced at the *James* hearing regarding the substance of that call, nor does Mr. Blake anticipate such evidence at trial.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated:  October 18, 2021                     */s Wendy L. Johnson*
                                                                  Wendy L. Johnson