IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br>v.<br>1.    JAYSON JEFFREY PENN,<br>2.    MIKELL REEVE FRIES,<br>3.    SCOTT JAMES BRADY,<br>4.    ROGER BORN AUSTIN,<br>5.    TIMOTHY R. MULRENIN,<br>6.    WILLIAM VINCENT KANTOLA,<br>7.    JIMMIE LEE LITTLE,<br>8.    WILLIAM WADE LOVETTE,<br>9.    GARY BRIAN ROBERTS, and<br>10.  RICKIE PATTERSON BLAKE,<br><br>      Defendants. | No. 20-cr-00152-PAB |

**DEFENDANTS' JOINT OPPOSITION TO THE GOVERNMENT'S
SECOND MOTION TO EXCLUDE CERTAIN TESTIMONY
BY PROFESSOR EDWARD SNYDER**

Defendants' recent Rule 16 disclosure could not be clearer about Professor Edward Snyder's opinions or the bases for them. Professor Snyder will testify that pricing data shows "the prices at issue were not systematically higher than a database of benchmark prices, including prices not alleged to have been affected by the alleged conspiracy, and, therefore, are inconsistent with the alleged price-fixing and bid-rigging conspiracy." Ex. A at 1-2. Professor Snyder explains the bases for these opinions in detail, including the "economic techniques" he used to "test alternative hypotheses related to certain bids and prices of broiler chicken observed in this case." *Id*. at 1. Specifically, Professor Snyder:

1

- "[T]ested whether 'observed outcomes,' which he defines here as bids, prices, and related data, are consistent with the alleged price-fixing and bid-rigging agreement." *Id*.

- "[A]nalyzed supply and demand conditions, industry characteristics, bid and price data, and suppliers' specific business strategies and assessed their impact on the observed outcomes." *Id*.

- "[U]sed benchmarking to compare the prices at issue to prices that were not alleged to have been affected by the alleged conspiracy," a "standard approach used by economists." *Id*.

- Identified for the government the foundational economic literature for his benchmarking approach and its application to antitrust cases like this. *Id*. at 1 n.1.

- And explained the datasets upon which he relied, noting they are "comprised of prices paid by a sample of buyers of comparable products and prices charged by a sample of suppliers of comparable products across various time periods." *Id*. at 1.

Separately, while Rule 16 does not require disclosure of the data or documents an expert used to form his opinions, Defendants produced to the government the specific datasets that Professor Snyder analyzed and about which he will testify. *See United States v. Reulet*, 2015 WL 7776876, at *6 (D. Kan. Dec. 2, 2015) ("a Rule 16 notice is not required . . . to provide all of the data or other information considered to form the opinions and need not describe the witness's methodology" (quotation marks omitted)); *United States v. Schneider*, 2008 WL 11396783, at *2 (D. Kan. July 15, 2008) (similar).

These disclosures easily satisfy the requirements of Rule 16. *See United States v. Heller*, 2019 WL 5101472, at *1 (D. Colo. Oct. 11, 2019) (Brimmer, C.J.) (when actual opinion is

disclosed, any "criticism of the lack of detail regarding the *bases* for those opinions" is "unpersua[sive]" (quotation omitted)); *United States v. De La Rosa-Calderon*, 2021 WL 3186631, at *2 (D. Colo. July 28, 2021) (Rule 16 notice "merely incorporating by reference each witness's litigation packet" sufficient); *United States v. Shannon*, 2019 WL 458911, at *2 (D. Colo. Feb. 6, 2019) (Rule 16 summary "falls far short of the complete statement required of litigants in civil cases"); *United States v. McCluskey*, 954 F. Supp. 2d 1224, 1231 (D.N.M. 2013) ("Detailed, extensive discussion is not required in the Rule 16 summary." (internal citation omitted)).

The government, however, contends that the disclosures are inadequate because they focus on "broad topics." Doc. 725 at 3-4. Not so. First, the government's arguments turn on the selective editing of and deliberate omission from Professor Snyder's disclosures—most notably the specifics of his benchmarking analysis, the data on which he relied, and the specific outcomes of the process. *Id*. at 4.[1] Second, the disclosures address each of the issues identified by the Court in its prior order. Doc. 649 at 8-9. The disclosures identify the "outcomes" of Professor Snyder's analyses: the prices purportedly fixed and rigged were not systematically higher than prices unaffected by the alleged conspiracy. Ex. A at 1-2. The disclosures explain the "opinions he drew" from those outcomes: the economic data is not consistent with the existence of the

---

[1] This is not the first time the government has ignored the actual content of Professor Snyder's disclosures. In its original motion to exclude, the government ignored completely Professor Snyder's May 14, 2021, disclosures, which provided additional information about Professor Snyder's economic outcomes opinions and the bases for them. *See* Doc. 362 at 10-11 (explaining government's selective and inappropriate approach). The Court did not consider Professor Snyder's initial disclosure in reaching its opinion, Doc. 649 at 8-9 (addressing the four sentences attacked by Plaintiffs), which means the Court never deemed it inadequate, as the government suggests, Doc. 725 at 1.

alleged price-fixing and bid-rigging conspiracy. *Id*. And the disclosures identify the "bases and reasons for those opinions," including the datasets considered, the benchmarking employed, the literature supporting that approach, and other factors for which he accounted (supply and demand conditions, industry characteristics, and business strategies). *Id*. at 1 & n.1. There is no basis under Rule 16 to exclude Professor Snyder's testimony.

The government also argues that Professor Snyder's benchmarking analysis is not relevant and will waste time because the "disclosures do not indicate that the defendants knew about those [unaffected benchmark] prices." Doc. 725 at 4. In its view, any economic evidence that lacks a "connection to the defendants' state of mind" is irrelevant damages-type analysis. *Id*. at 5. The argument—for which the government offers no other explanation—makes no sense. The government seems to presume (i) the existence of a price-fixing agreement and (ii) that the purpose of Professor Snyder's testimony is to justify illegal conduct, including through lack of knowledge. But as the Court has already recognized, "the defendants' theory of the case is not that there was a justifiable agreement among the suppliers to fix prices. Rather, the defendants seek to introduce Professor Snyder's opinion as part of their theory that there was no agreement among them to fix prices in the first place." Doc. 649 at 7. That is exactly the point to which Professor Snyder's economic outcome opinions speak: the actual prices charged were consistent with non-conspiracy prices, undermining the inference of a conspiratorial agreement in the first place. Courts regularly admit this type of economic evidence in criminal price-fixing cases and it is clearly relevant. *See, e.g.*, *United States v. Bestway Disposal Corp.*, 724 F. Supp. 62, 69-70 (W.D.N.Y. 1988) (economic analysis appropriate to show "the defendants' behavior was completely consistent with the economic theory of competition in the marketplace."); Doc. 362

4

at 7-9 (collecting cases).

Separately, the Court has already ruled that Professor Snyder can opine about various industry-wide indicia and whether they are inconsistent with the existence of a price fixing conspiracy. Doc. 649 at 5-7, 9-10. His analysis of the specific indicia at issue (actual bids and prices) is therefore clearly "relevant to a fact in consequence – whether there was an agreement – and is not confusing to the jury because [Professor] Snyder is not attempting to opine that actual bid rigging is pro-competitive." *Id*. at 7 n.1. His economic outcomes analysis should not be excluded. *See United States v. Goodman*, 850 F.2d 1473, 1479-80 (11th Cir. 1988) (reversible error to exclude economic evidence that "is crucial to the establishment of a valid [antitrust] defense"); *Cont'l Baking Co. v. United States*, 281 F.2d 137, 145-46 (6th Cir. 1960) (reversing district court for excluding economic evidence).

Finally, the government argues that if the Court does not exclude Professor Snyder's economic outcomes opinions, Defendants must make additional disclosures laying out the products considered, when they were sold, who sold them, the customers who bought them, and the surrounding negotiation history. Doc. 725 at 5-6. The government offers no authority for its position; nor could it. As discussed above, Defendants disclosed to the government the exact datasets Professor Snyder considered and about which he will testify. The government has all the relevant information—including Professor Snyder's opinions and the bases for them—and there is no requirement under Rule 16 that Defendants walk the government through Professor Snyder's methodology. *United States v. Brown*, 592 F.3d 1088, 1091 (10th Cir. 2009) (Rule 16 does not require a party to "specifically describe the expert's methodology"); *Reulet*, 2015 WL 7776876, at *6 (same). To accept the government's position would impose additional

requirements on Defendants and "would result in grossly incongruent and inequitable disclosure obligations, which are surely not required under the rules," and which the Constitution protects against. *United States v. Mehta*, 236 F. Supp. 2d 150, 155-58 (D. Mass. 2002) (defendant need not disclose "final opinion" while discovery ongoing or a "line by line" accounting of why the expert raises certain challenges).

* * * * *

Defendants properly disclosed Professor Snyder's economic outcomes opinions and the bases for them. There are no grounds to order additional disclosures, let alone to exclude the relevant opinions. Indeed, the government's motion misrepresents Defendants' recent disclosures, attempts to relitigate arguments that the Court has already rejected, and offers no support for its conclusory assertions. The Court should deny the motion.

If the Court disagrees, however, it should order additional disclosures rather than exclude Professor Snyder's opinions about economic outcomes. "[E]xclusion of a witness's expert testimony is almost never imposed in the absence of a constitutional violation or statutory authority for such exclusion." *United States v. Sarracino*, 340 F.3d 1148, 1170 (10th Cir. 2003) (quotation omitted); *see Brown*, 592 F.3d at 1090 n.4 (exclusion is "extreme"). In the "absence of a finding of bad faith, the court should impose the least severe sanction that will accomplish prompt and full compliance with" discovery obligations. *United States v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002); *United States v. Yurek*, 2017 WL 2930577, at *2 (D. Colo. July 7, 2017) ("appropriate remedy" is "to direct supplementation, rather than to exclude the testimony"). Here, Professor Snyder will not testify for several more weeks, the government would not suffer any prejudice from an additional disclosure—indeed, the Court has already

6

ordered disclosures during the course of trial, Doc. 649 at 13—and there is no bad faith warranting the extreme remedy of exclusion.

Dated:  October 26, 2021            Respectfully submitted,

| | |
|---|---|
| *s/ John A. Fagg, Jr.*<br>John A. Fagg, Jr.<br>MOORE & VAN ALLEN PLLC<br>Attorney for William Wade Lovette<br>100 North Tryon Street, Suite 4700<br>Charlotte, NC 28202<br>(704) 331-3622<br>johnfagg@mvalaw.com | *s/ Michael F. Tubach*<br>Michael F. Tubach<br>O'MELVENY & MYERS LLP<br>Attorney for Jayson Jeffrey Penn<br>Two Embarcadero Center, 28th Floor<br>San Francisco, California 94111-3823<br>(415) 984-8700<br>mtubach@omm.com |
| *s/ Richard K. Kornfeld*<br>Richard K. Kornfeld<br>RECHT KORNFELD, P.C.<br>Attorney for Mikell Reeve Fries<br>1600 Stout Street, Suite 1400<br>Denver, CO 80202<br>(303) 573-1900<br>rick@rklawpc.com | *s/ Michael S. Feldberg*<br>Michael S. Feldberg<br>REICHMAN JORGENSEN LEHMAN & FELDBERG LLP<br>Attorney for Roger Born Austin<br>750 Third Avenue, Suite 2400<br>New York, NY 10017<br>(212) 381-1965<br>mfeldberg@reichmanjorgensen.com |
| *s/ Bryan Lavine*<br>Bryan Lavine<br>TROUTMAN PEPPER HAMILTON SANDERS LLP<br>Attorney for Scott James Brady<br>600 Peachtree St. NE, Suite 3000<br>Atlanta, GA 30308<br>(404) 885-3170<br>Bryan.lavine@troutman.com | *s/ Elizabeth Prewitt*<br>Elizabeth B. Prewitt<br>LATHAM & WATKINS LLP<br>Attorney for Timothy R. Mulrenin<br>1271 Avenue of the Americas<br>New York, NY 10020<br>(212) 906-1200<br>elizabeth.prewitt@lw.com |
| *s/ James A. Backstrom*<br>James A. Backstrom, Counsellor at Law<br>Attorney for William Vincent Kantola<br>1515 Market Street, Suite 1200<br>Philadelphia, PA 19102-1932<br>(215) 864-7797<br>jabber@backstromlaw.com | *s/ Mark A. Byrne*<br>Mark A. Byrne<br>BYRNE & NIXON LLP<br>Attorney for Jimmie Lee Little<br>888 West Sixth St, Suite 1100<br>Los Angeles, CA 90017<br>(213) 620-8003<br>markbyrne@byrnenixon.com |

*s/ Craig Allen Gillen*  
Craig Allen Gillen  
GILLEN, WITHERS & LAKE, LLC  
Attorney for Gary Brian Roberts  
400 Galleria Parkway, Ste. 1920  
Atlanta, GA 30339  
(404) 842-9700  
cgillen@gwllawfirm.com  

*s/ Barry J. Pollack*  
Barry J. Pollack  
Attorney for Rickie Patterson Blake  
ROBBINS, RUSSELL, ENGLERT,  
ORSECK, & UNTEREINER LLP  
2000 K Street N.W., 4th Floor  
Washington, DC 20006  
(202) 775-4514  
bpollack@robbinsrussell.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated:  October 26, 2021

*s/ Michael F. Tubach*

Michael F. Tubach

9