IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **JAYSON JEFFREY PENN,**
2. **MIKELL REEVE FRIES,**
3. **SCOTT JAMES BRADY,**
4. **ROGER BORN AUSTIN,**
5. **TIMOTHY R. MULRENIN,**
6. **WILLIAM VINCENT KANTOLA,**
7. **JIMMIE LEE LITTLE,**
8. **WILLIAM WADE LOVETTE,**
9. **GARY BRIAN ROBERTS,**
10. **RICKIE PATTERSON BLAKE,**

    Defendants.

---

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT JAYSON PENN'S MOTION TO EXCLUDE GOVERNMENT EXHIBIT 1030

---

The government respectfully files this response in opposition to Jayson Penn's motion[1] to exclude GX-1030. ECF 749. The Court should deny the motion because the document can be authenticated through live witnesses, does not violate the Best Evidence Rule, and in the event the government seeks to introduce the short, relevant

---

[1] Though Jayson Penn filed this motion presumably because the document directly ties him to the conspiracy, and undercuts his arguments regarding mere price sharing, the evidence contained in this exhibit is admissible against every defendant, *see* Fed.R.Evid. 801(d)(2)(E).

excerpt of Pete Martin's deposition, it would not violate Penn's rights under the Confrontation Clause.

## BACKGROUND

GX-1030, which is also known by its document control number, MAR-JAC_0000865503, is a single page of handwritten notes. The top of the page is dated August 29, 2014. Toward the bottom of the page the document's author, Pete Martin of Mar-Jac, notes several conversations including that he "Talked to Jason [sic] Penn." The date coincides with a key time period in the conspirators' efforts to collude in the price negotiations with RSCS, the purchasing cooperative for KFC (among other YUM! Brands). This note is highly relevant to showing the existence of the charged conspiracy, and to the knowing participation of Jayson Penn, among others. The government proffered statements from GX-1030 in its James Log entry #136. ECF 358-2. The Court ruled that the statements were conditionally admissible against all defendants, finding that "[t]he government has shown, by a preponderance of the evidence, that this statement was made during the conspiracy and in furtherance of the conspiracy." ECF 559 at 31.

The document is clearly authentic. How do we know? Both the author of the notes, as well as Mar-Jac themselves have said so. Mr. Martin, in his deposition taken on May 7, 2019, confirmed that the document, which was marked as Deposition Exhibit 2272, were notes he wrote on August 29, 2014. ECF 721 at 4. And he had every incentive to resist rather than acquiesce in making that admission. At the time he was the former CEO of Mar-Jac Poultry, and the company was (and still is) a defendant in

2

the civil class-action lawsuit In Re Broiler Chicken Antitrust Litigation, Case No. 1:16-cv-08637 (N.D. Ill.).

Then, the lawyers representing Mar-Jac in the civil case, when faced with the opportunity to object to the document's authenticity, stated that Mar-Jac did not object. Attachment A to this motion proves it. Attachment A is an order signed earlier this week by the magistrate judge assigned to the In re Broilers matter. The Order permits the government to use the information contained in the Order for the Penn case including "for the purpose of authenticating exhibits." The Order contains a letter from Mar-Jac's counsel in the civil case regarding the authenticity of specified Mar-Jac documents. The letter is accompanied by "a chart of Mar-Jac's responses and objections as to those documents." On page 6 of the chart, Mar-Jac's counsel represents that the document (identified as Plaintiff's Exhibit 2272) is handwritten notes and that Mar-Jac has no objection. And in this litigation, Mar-Jac had a great incentive to object: they were a defendant in a lawsuit with multiple putative class actions, and dozens of direct-action plaintiffs. The company was facing treble damages if they lost the suit.

The government received GX-1030 in a document production made by the direct-purchaser class counsel in the In re Broilers case. They, in turn, received the document directly Mar-Jac. The government decided to obtain the documents from the plaintiffs, rather than opt for the more burdensome task, for both the government and companies like Mar-Jac, of requiring Mar-Jac to produce to the government the exact same documents that Mar-Jac had already produced in the civil case. As trial in the Penn case approached, to avoid the need for Mar-Jac to send another voluminous

3

production, the government asked Mar-Jac if the company would certify to the authenticity of the Bates ranges of documents it produced to the plaintiffs. Mar-Jac subsequently produced a certification indicating GX-1030 fell within the range of Bates numbers produced by Mar-Jac.

## ARGUMENT

### I. The Government Intends to Authenticate GX-1030 through witnesses with knowledge.

Penn first argues that Mar-Jac custodian Joel Williams lacks the personal knowledge to authenticate GX-1030. ECF 749 at 2-4 ("Mr. Williams lacks personal knowledge."). Personal knowledge, of course, is not required to authenticate records under Rule 901. Rather, Rule 901 requires only the "testimony of a witness with knowledge. . . that an item is what it is claimed to be."

Rule 901 simply requires that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." There is only a "minimal showing required by Rule 901; namely, [whether] the Government has laid a foundation from which a fact-finder could legitimately infer that the evidence is what its proponent claims it to be." *United States v. Ligambi*, 891 F. Supp. 2d 709, 720 (E.D. Pa. 2012). *See also Egan v. Live Nation Worldwide, Inc*., 764 F. App'x 204, 209 (3d Cir. 2019) ("Rule 901(b)(1) requires only knowledge, not contemporaneous personal knowledge."). The government intends to meet this low bar to authenticate GX-1030 with live testimony from Mr. Williams, Simeon Morbey, and potentially other witnesses.

4

When the entirety of the authentication evidence is considered, it will more than satisfy the requirements for authenticity.

Penn also observes that Mr. Williams, in a declaration, stated that he cannot "attest to the accuracy of any content" that he was authenticating in that declaration. But Penn fails to appreciate the distinction between authenticity, which requires that the item be what the proponent purports it to be, and accuracy, which relates to whether the underlying information bears sufficient reliability to potentially qualify for a hearsay exception. ECF 673 at 8.

## II. Penn Has Failed to Show Admission of GX-1030 Would Violate the Best Evidence Rule.

Penn's unwarranted invocation of the best-evidence rule should be rejected. Fed.R.Evid. 1003 states that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Penn has raised no question, let alone a "genuine" question about the original's authenticity, and there is no indication that the circumstances make it unfair to admit. As stated above, Pete Martin, the person who wrote the notes, *admitted that he wrote them*, in circumstances when he would have had an incentive to disavow that the notes were his.

Penn manufactures defects with the document that simply do not exist. For instance, he insinuates that the document was "whited-out" and otherwise altered prior to photocopying. ECF 749 at 3-4. Unlike the photocopied document in the case defendants cited, where the "key information contained therein was barely legible," *Lozano v. Ashcroft*, 258 F.3d 1160, 1166 (10th Cir. 2001), all the text in GX-1030 is

5

clear. Not a word is illegible, and defendants do not specify where anomalies on the page occur.

If Penn seriously questions the credibility of the contents of the document and the Court agrees, the allegation on authenticity is a question for the jury. *See FDIC v. Staudinger*, 797 F.2d 908, 910 (10th Cir. 1986) (upholding a trial court's admission of documents which the defendant argued "were altered by hand" in part because the defendant's "arguments concerning the accuracy of the records goes to their weight, not to their admissibility.").

Penn has shown no reason to deviate from the general rule that "[a] duplicate is admissible to the same extent as the original" under Rule 1004.

### III. GX-1030 Can be Authenticated via Civil Deposition Testimony without violating the Confrontation Clause

Use of Mr. Martin's deposition testimony solely for the purpose of authenticating GX-1030 does not violate the Confrontation Clause. Using Martin's deposition testimony does not present any Confrontation Clause problem because (1) the government intends to use the testimony for authentication only, and (2) Martin's purpose in giving the testimony was not to create evidence to be used against Penn or anyone else in the criminal proceedings.

First, the Tenth Circuit's Confrontation Clause case law shows a distinction between using a sworn statement to establish the authenticity of a piece of evidence and using a sworn statement to prove some fact at trial. *See United States v. Yeley-Davis*, 632 F.3d 673, 680 (10th Cir. 2011). In *Yeley-Davis*, the Tenth Circuit held that an affidavit signed by a Verizon custodian certifying the authenticity of the phone records

6

was not testimonial. *See id.* Although the affiant "objectively could have foreseen that the certification and affidavit might be used in the investigation or prosecution of a crime," the Confrontation Clause did not prohibit the prosecution's use of the affidavit for authentication purposes. *Id.* Instead, the affidavit merely established that the phone records were business records, rather than weighing on any fact that the prosecution sought to prove. *See id.* ("Because the purpose of the certifications here was merely to authenticate the cell phone records—and not to establish or prove some fact at trial—…they are not testimonial.").

The Tenth Circuit contrasted the circumstances it encountered in *Yeley-Davis* with those that the Supreme Court encountered in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). There, the Supreme Court held that an affidavit from a forensic scientist stating that "material seized by the police and connected to the defendant was cocaine" constituted a testimonial statement. *Melendez-Diaz*, 557 U.S. at 307. In that case, the affidavit was "functionally identical to live, in-court testimony" establishing the defendant's guilt. *Id.* at 310–11. Thus, the Confrontation Clause barred the court's admitting the analyst's affidavit without accompanying testimony. Yet the Supreme Court was careful to limit the breadth of its holding, writing that "a clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant." *Melendez-Diaz*, 557 U.S. 322–23 (emphasis in original).

Here, Martin's deposition testimony is far closer to the circumstances that the Tenth Circuit encountered in *Yeley-Davis* than those the Supreme Court encountered in

7

*Melendez-Diaz*. Just as the Verizon custodian's affidavit merely established the authenticity of the phone records, Martin's deposition testimony merely establishes the authenticity of GX-1030. And unlike using a forensic analyst's affidavit to establish that a substance contains narcotics, Martin's deposition testimony does not vouch for the contents of GX-1030.

Similarly, Martin's testimony was not created for the purpose of providing evidence against Penn, which the Supreme Court has emphasized is important in determining what the Confrontation Clause requires. The affidavit in *Melendez-Diaz* was created "for the *sole purpose* of providing evidence against a defendant." *Melendez-Diaz*, 557 U.S. at 323. That is not the case here. Martin did not testify in the civil deposition with the sole purpose of creating evidence against Penn in this criminal case. *See also United States v. Moya*, 748 F. App'x 819, 831 (10th Cir. 2018) (noting the Supreme Court's emphasis on whether an affidavit's "sole purpose" is to create evidence against the defendant).[2]

Martin's expectations during the deposition are also not dispositive on the Confrontation Clause question. A Verizon custodian who swears an affidavit regarding the authenticity of business records provided to federal law enforcement could foresee how their sworn statements might be used against the defendant. The Tenth Circuit

---

[2] Penn also relies on Federal Rule of Civil Procedure 32 as "requiring that the party against whom deposition testimony is offered have been present or represented at the relevant deposition." ECF 749 at 7. The Federal Rules of Civil Procedure apply to "civil actions and proceedings." Fed. R. Civ. P. 1. It goes without saying that this is not a civil action or proceeding. Along the same lines, Penn's citation to *United States v. Cinergy Corp.*, is inapt because the court there based its authentication decision on Federal Rule of Civil Procedure 32. *See* No. 1:99-CV-1693-LJM-JMS, 2009 WL 6327419, at *3 (S.D. Ind. Apr. 24, 2009) (citing Fed. R. Civ. P. 32).

held that the latter scenario was not dispositive, and the same reasoning should apply to Martin's testimony authenticating GX-1030. *Yeley-Davis*, 632 F.3d at 680.[3]

## CONCLUSION

For the reasons set forth above, the Court should deny Penn's motion to exclude GX-1030.

Dated: October 28, 2021         Respectfully submitted,

/s/ Michael Koenig
MICHAEL KOENIG
HEATHER CALL
CAROLYN SWEENEY
PAUL TORZILLI
Antitrust Division
U.S. Department of Justice
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 616-2165
michael.koenig@usdoj.gov
Attorneys for the United States

---

[3] Out of an abundance of caution, the Court can provide the jury with an instruction limiting the use of the except of Mr. Martin's deposition transcript to assess whether GX-1030 is authentic.