IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY R. MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

      Defendants.

## DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF REQUEST THAT GOVERNMENT'S "SUMMARY EXHIBITS" BE TREATED AS DEMONSTRATIVES FOR ARGUMENT

Defendants respectfully submit this supplemental brief in further support of their request that the government's summary exhibits (the "Charts") be treated as demonstrative only and not be admitted as evidence. The government's closing argument at the last trial provides grounds for the Court to reconsider its prior rulings allowing these Charts as evidence. During its closing arguments, the government made clear that its Charts are simply intended to bolster its arguments. (*See, e.g.*, 12/8/2021 Tr. 4776:11-14 ("These summaries, they show you that puzzle and that

pattern coming together. And what you will generally see, the first one here is four pages so you won't see it all at once but you will see that pattern.").

Since the conclusion of the first trial, the government has modified its Charts and added others on a virtually continual basis, even after the Court ordered the government to rely only upon the versions provided to Defendants at the February 10 pretrial conference. As in the first trial, with the Charts having been authored and controlled exclusively by government counsel, the only witness proffered by the government for the admission of the Charts was Ms. Evans, a paralegal from the San Francisco office with no connection to or knowledge of the investigation, who was called in to cite check the Charts, then to testify as to their "accuracy." Ms. Evans has already confirmed during this trial that all changes to the proffered summary exhibits had to be approved by the prosectors and she had no discretion to make changes on her own. (2/28/22 Unofficial Tr. 106:21-107:14.[1])

The Charts comprise highly selective lists of telephone calls, edited text messages among various Defendants, and heavily edited emails, many of which are merely the title from the email or an incomplete and often misleading portion of a sentence or paragraph. The fact that the government made significant editorial (and undisclosed) changes demonstrates that these exhbibits fall outside the scope of Rules 1006 as they are not compilations of voluminous material. Each of these facts has legal significance and, Defendants respectfully submit, drives the inescapable conclusion that the Charts are no more than, and can be no more than, demonstrative exhibits under

---

[1] For the convenience of the Court, Defendants cite to an unofficial transcript of the proceedings because an official transcript is not yet available. Defendants defer to the Court to the extent the Court's recollection differs from the transcript.

2

the controlling legal authority.

Just this morning, the Court struck certain entries of GX 11 and GX 1030 because they were impermissibly argumentative and editorialized. The Court's same reasoning should apply to the other proffered Charts as well, which suffer the same fatal flaws.

## SUMMARY OF ARGUMENT

The Charts have essential characteristics from their components and their messaging that make them testimonial documents. The testimonial characteristics include:

- The Charts are the product of dozens of subjective decisions by the authors, the prosecuting attorneys, as to every aspect of the Charts—what to include, what to exclude, how to edit each entry, layout, color, and order of the entries.

- The relationship of each entry on the Charts, each "event," whether a call, an email or a text message, is intended to convey a message to the jury: these "events" are related; they evidence the alleged conspiracy; and they evidence the participation of the individuals, particularly Defendants, in the alleged conspiracy.

- The government's case theory is portrayed for each episode and mapped in the Charts and defines the Charts in every aspect.

Under *Davis v. Washington*, 547 U.S. 813 (2006) and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) and their progeny, the Charts are testimonial, first because the text messages and email are testimonial (as contrasted with telephone records, which standing alone are not) and second because the Charts have a "primary purpose" of establishing or proving past events the

3

government argues are relevant to this later criminal prosecution. *Cf. Davis*, 547 U.S. at 822; *Melendez-Diaz*, 557 U.S. at 324.

As the Charts are testimonial, they are not admissible unless Defendants have the opportunity to cross-examine the author of the Charts. The government's use of Ms. Evans is the absolute equivalent of New Mexico's use of a surrogate analyst proffered to testify about the testing conducted by a different analyst, which the Supreme Court rejected in *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), because the Confrontation Clause gives Defendants the right to confront the author of the testimonial document. *Id.* at 661-62 (surrogate testimony "could not convey what [the report author] knew or observed about the events . . . [n]or could such surrogate testimony expose any lapses or lies on the [author's part]"). The Tenth Circuit's principal decision on these issues is *United States v. Ray*, 370 F. 3d 1039, 1046-48 (10th Cir. 2004), *rev'd and remanded on other grounds*, *Ray v. United States*, 543 U.S. 1109 (2005), which also makes admissibility contingent upon the opportunity to conduct broad and meaningful cross-examination of the author, a proposition the government has long conceded. Doc. 783 at 3; *see also United States v. Renteria*, 720 F.3d 1245, 1253 (10th Cir. 2013). The right to cross-examine is unaffected by the apparent reliability of the testimonial material. *Melendez-Diaz*, 557 U.S. at 312. Most recently, in *Hemphill v. New York*, 142 S. Ct. 681 (2022), the Supreme Court yet again reiterated that the Confrontation Clause "commands, not the evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 691 (citation omitted). While Defendants may have missed the decision, Defendants have found no decision by a U.S. Circuit Court or District Court that holds charts authored exclusively by trial

4

counsel and as to which Defendants cannot cross-examine the author have been admitted into evidence.

The Charts, as structured, are not mere compilations of business records or voluminous material. They are "interpretations of past data," and as such are not properly Rule 1006 exhibits. *State Off. Sys., Inc. v. Olivetti*, 762 F. 2d 843, 845 (10th Cir. 1985). Further, their editorializing by color, by structure, and by the story-telling selectivity of the information included, which is in evidence in the form of the text messages and emails as exhibits, make them "pedagogical," not Rule 1006. *United States v. Bray*, 139 F.3d 1104, 1109-10 (6th Cir. 1998); *see also United States v. Hawkins*, 796 F.3d 843, 865-66 (8th Cir. 2015). The Court has already struck certain entries as violative of Rule 1006 and should do the same with the remaining Charts.

## ARGUMENT

### I.  ADMISSION OF THE GOVERNMENT'S SUMMARY CHARTS INTO EVIDENCE VIOLATES DEFENDANTS' CONFRONTATION CLAUSE RIGHTS.

Generally, "[t]o rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.'" *Bullcoming*, 564 U.S. at 659 n.6 (citation omitted). The Charts were created by the prosecutors from text messages and email and phone records, for exactly that purpose. *See Michigan v. Bryant*, 562 U.S. 344, 356-57 (2011) (*Davis* did not attempt to produce an exhaustive classification of all testimonial statements). While considered in the context of out-of-court statements, in *Melendez-Diaz*, the Supreme Court identified the essential characteristic of a statement that is testimonial: it has been created for the purpose of establishing or proving some fact at a trial. *Bullcoming*, 564 U.S. at 670 (citing *Melendez-Diaz*, 557 U.S. at 324).

5

Certainly not all summary charts are testimonial. However, when, as in this case, the Charts are prepared by the prosecutors and offered, not to summarize voluminous records like telephone call records, but to stitch together the substance of text messages and emails with the timing of calls to tell a story supporting an inference regarding the subject of a call and the interrelationship of all of the communications, then they are testimonial—they are documents created outside the courtroom for the purpose of presenting a narrative that purports to prove an alleged crime. *See, e.g.*, *United States v. Oloyede*, 933 F.3d 302, 310-11 (4th Cir. 2019) (a proper summary exhibit "must be an objectively accurate summarization of the underlying documents, not a skewed selection of some [parts] of the documents to further the proponent's theory of the case"); *Flemister v. United States*, 260 F.2d 513, 517 (5th Cir. 1958) (once a party undertakes to summarize a select set of voluminous documents, "it cannot include only items against the interest of the accused. It must, in other words, be what it purports to be": an accurate summary of the select set of voluminous documents). The Charts are testimonial because they are the product of dozens of subjective decisions by the prosecuting attorneys as to every aspect of the Charts—what to include, what to exclude, how to edit each entry, layout, color, and order of the entries. The relationship of each entry on the Charts, each "event," whether a call, an email, or a text message, is intended to convey a message to the jury: these "events" are related; they evidence the alleged conspiracy; and they evidence the participation of the individuals, particularly Defendants, in the alleged conspiracy. The government's case theory is portrayed for each episode and mapped in the Charts and defines the Charts in every aspect. In *Bullcoming*, in which the state argued the report in issue, like the prosecutor's out-of-court-created charts, were not testimonial, the Supreme

6

Court rejected the premise: created solely for an evidentiary purpose, the report was held to be testimonial. 564 U.S. at 664-65.

Those prosecutors' decisions—partiality, biases, exclusion of relevant evidence and other failings that Defendants have the right to prove to the jury—are firewalled from cross-examination by the proffering of the Charts through Ms. Evans who, as she already admitted, had no discretion on what to include, remove, or change in the Charts. (2/28/22 Unofficial Tr. 106:21-107:14.) It was exactly this type of strategy, visibly employed by the government here, which objected that the question was "beyond the scope" when Ms. Evans was questioned about decisions made in the preparation of the Charts, that the Supreme Court held violates the Confrontation clause in *Bullcoming*, 564 U.S. at 662 (rejecting the use of a surrogate to present testimonial evidence in the form of a test report, stating "[t]he Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination"). And reliability of the information in the chart or overall fairness do not solve the Confrontation Clause violation. "If a 'particular guarantee' of the Sixth Amendment is violated, no substitute procedure can cure the violation, and '[n]o additional showing of prejudice is required to make the violation complete.'" *Bullcoming*, 564 U.S. at 662-63 (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006)).

The cases make clear that even as a matter of evidentiary policy, which is rooted inextricably in the Confrontation Clause, robust cross-examination of the author or person of substance in the preparation of the charts is a prerequisite to admission. In *Conford v. United States*, which predates *Crawford v. Washington*, 541 U.S. 36 (2004), *Davis*, *Bullcoming*, and the other recent Confrontation Clause cases, the Tenth Circuit made plain that when summary exhibits

7

are employed by the government "broad cross-examination should be permitted upon the summaries to permit a thorough test of their accuracy." 336 F.2d 285, 288 (10th Cir. 1964) (contemplating cross-examination of the offering expert). In *Ray*, the Tenth Circuit addressed the admissibility of summary exhibits and reiterated that the trial court must consider "the possible prejudice that may result to the defendant in allowing such evidence, looking specifically to whether ***the preparer*** of the chart was available for cross-examination. . . ." 370 F. 3d at 1047 (considering charts under 611(a) (emphasis added)); *see also Renteria*, 720 F.3d at 1253 (citing *Ray* with approval and finding that the chart preparer "was subjected to extensive cross examination"); *United States v. Baker*, 10 F.3d 1374, 1412 (9th Cir. 2003), *overruled on other grounds*, *United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000) (the defense had the "full opportunity" to cross-examine the agent providing summary evidence "about her methods of preparing the summaries, her alleged selectivity, and her partiality").

The government's position relies in part on a churlish definition of accuracy—it has been cite checked and the cites are accurate. That is not accuracy for purposes of admissibility, nor for defining the scope of cross-examination under *Melendez-Diaz* and *Bullcoming*. Accuracy means fairness, truthfulness, completeness, absence of bias.

**II.   THE SUMMARY CHARTS ARE NOT PROPERLY RULE 1006 SUMMARIES AND ARE NO MORE THAN DEMONSTRATIVE ILLUSTRATIONS OF THE GOVERNMENT'S ARGUMENTS.**

Defendants have previously briefed the "obvious dangers posed by summarization of evidence." *See, e.g.*, *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983) (stating that there are "obvious dangers" posed by summary exhibits, including the possibility that the jury will "treat the summary as additional evidence or as corroborative of the truth of the underlying

testimony"); *United States v. Means*, 695 F.2d 811, 817 (5th Cir. 1983) (recognizing "the powerful impression which charts can make upon a jury, vesting the charts with 'an air of credibility' independent of the evidence purported to be summarized" (citation omitted)).  For compliance with the intent of Rule 1006, it means "with respect to summaries admitted in lieu of the underlying documents, that the information on the summary is not embellished by or annotated with the conclusions of or inferences drawn by the proponent, whether in the form of labels, captions, highlighting techniques, or otherwise. . . ."  *Bray*, 139 F.3d at 1110; *see also Hawkins*, 796 F.3d at 865 ("Although Rule 1006 permits summaries of voluminous records to 'include assumptions and conclusions,' the government's argumentative recasting [defendant's] statements certainly would have rendered the government's summaries of his conference calls inadmissible under this rule." (internal citation omitted)).  The Charts suffer all of these failings and more.

The Charts present these dangers writ large.  While they might be admissible under Rule 611(a) with the required safeguards of cross-examination and a limiting instruction, there is no cross-examination here.  Further, when, as in this case, the government goes to extraordinary lengths to prevent meaningful cross-examination, importing a paralegal ignorant of the case from another state merely to proffer a cite checked document authored by the prosecutors, the Sixth Amendment, the controlling case law discussed herein, and fundamental fairness compel the ruling the Charts are not admissible evidence.  They are no more than demonstratives for use in argument.

Indeed, this Court has already held that certain of the proffered summary exhibits do not comply with Rule 1006 because they contain impermissible argument and editorializing.

9

Defendants respectfully submit that the Court should apply this same reason to the remaining summary exhibits.

## CONCLUSION

For these reasons, Defendants respectfully request the government's summary exhibits be ruled inadmissible and limited to use in argument.

Dated:  March 2, 2022                                  Respectfully submitted,

| | |
|---|---|
| *s/James P. McLoughlin, Jr.* | *s/ Michael F. Tubach* |
| James P. McLoughlin, Jr. | Michael F. Tubach |
| John A. Fagg, Jr. | O'MELVENY & MYERS LLP |
| MOORE & VAN ALLEN PLLC | Attorney for Jayson Jeffrey Penn |
| Attorney for William Wade Lovette | Two Embarcadero Center, 28th Floor |
| 100 North Tryon Street, Suite 4700 | San Francisco, California 94111-3823 |
| Charlotte, NC 28202 | (415) 984-8700 |
| (704) 331-3622 | mtubach@omm.com |
| johnfagg@mvalaw.com | |
| | |
| *s/ Richard K. Kornfeld* | *s/ Michael S. Feldberg* |
| Richard K. Kornfeld | Michael S. Feldberg |
| RECHT KORNFELD, P.C. | REICHMAN JORGENSEN LEHMAN & FELDBERG LLP |
| Attorney for Mikell Reeve Fries | Attorney for Roger Born Austin |
| 1600 Stout Street, Suite 1400 | 750 Third Avenue, Suite 2400 |
| Denver, CO 80202 | New York, NY 10017 |
| (303) 573-1900 | (212) 381-1965 |
| rick@rklawpc.com | mfeldberg@reichmanjorgensen.com |
| | |
| *s/ Bryan Lavine* | *s/ Elizabeth Prewitt* |
| Bryan Lavine | Elizabeth B. Prewitt |
| TROUTMAN PEPPER HAMILTON SANDERS LLP | LATHAM & WATKINS LLP |
| Attorney for Scott James Brady | Attorney for Timothy R. Mulrenin |
| 600 Peachtree St. NE, Suite 3000 | 1271 Avenue of the Americas |
| Atlanta, GA 30308 | New York, NY 10020 |
| (404) 885-3170 | (212) 906-1200 |
| Bryan.lavine@troutman.com | elizabeth.prewitt@lw.com |

*s/ James A. Backstrom*
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

*s/ Mark A. Byrne*
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

*s/ Craig Allen Gillen*
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

*s/ Barry J. Pollack*
Barry J. Pollack
Attorney for Rickie Patterson Blake
ROBBINS, RUSSELL, ENGLERT,
ORSECK, & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

Dated: March 2, 2022                               *s/James P. McLoughlin, Jr.*
                                                   James P. McLoughlin, Jr.