4521

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF COLORADO

 3   Criminal Action No. 20-cr-152-PAB

 4    UNITED STATES OF AMERICA,

 5           Plaintiff,

 6           vs.

 7   JAYSON JEFFREY PENN,
     MIKELL REEVE FRIES,
 8   SCOTT JAMES BRADY,
     ROGER BORN AUSTIN,
 9   TIMOTHY R. MULRENIN,
     WILLIAM VINCENT KANTOLA,
10   JIMMIE LEE LITTLE,
     WILLIAM WADE LOVETTE,
11   GAR BRIAN ROBERTS,
     RICKIE PATTERSON BLAKE,
12
             Defendants.
13   -----------------------------------------------------------

14                        REPORTER'S TRANSCRIPT

15                        Jury Trial, Vol. 22

16   -----------------------------------------------------------

17           Proceedings before the HONORABLE PHILIP A. BRIMMER,
     Judge, United States District Court for the District of
18   Colorado, commencing on the 29th day of March, 2022, in
     Courtroom A201, United States Courthouse, Denver, Colorado.
19

20                              APPEARANCES

21   For the Plaintiff:

22
     Michael Koenig, Carolyn Sweeney, Heather Call, Paul Torzilli,
23   Laura Butte and Jillian Rogowski, U.S. Department of Justice,
     450 Fifth Street N.W., Washington, DC 20530
24

25   Reported by KEVIN P. CARLIN, RMR, CRR, 901 19th Street, Room
     A259, Denver, CO 80294, (303)335-2358
```

Proceedings reported by mechanical stenography; transcription produced via computer.

4522

```
 1  For the Defendants:

 2  Anna Tryon Pletcher and Michael Tubach of
    O'Melveny & Myers, LLP, Two Embarcadero Center, 28th Floor,
 3  San Francisco, CA 94111-3823;
    Brian Quinn of O'Melveny & Myers, LLP, 1625 I Street N.W.,
 4  Washington, DC 20006, appearing for Defendant Penn.

 5  David Beller, Richard Kornfeld, and Kelly Page of
    Recht & Kornfeld, P.C., 1600 Stout Street, Suite 1400, Denver,
 6  CO 80202, appearing for Defendant Fries.

 7  Bryan B. Lavine of Troutman Pepper Hamilton Sanders, LLP, 600
    Peachtree Street NE,  Suite 3000, Atlanta, GA 30308;
 8  Laura Kuykendall and Megan Rahman of Troutman Pepper Hamilton
    Sanders, LLP,  1001 Haxall Point, Richmond VA 23219, appearing
 9  for Defendant Brady.

10  Michael Feldberg of Reichman, Jorgensen, Lehman, Feldberg, LLP,
    750 Third Avenue, 24th Floor, New York, NY 10017;
11  Laura F. Carwile of Reichman, Jorgensen, Lehman, Feldberg, LLP,
    100 Marine Parkway, Suite 300, Redwood Shores, CA 94065;
12  appearing for Defendant Austin.

13  Elizabeth B. Prewitt of Latham & Watkins, LLP,
    555 11th Street, N.W., Suite 1000, Washington, DC 20004;
14  Marci Gilligan LaBranche of Stimson, Stancil, LaBranche,
    Hubbard, LLC, 1652 North Downing Street, Denver, CO 80218,
15  appearing for Defendant Mulrenin.

16  James A. Backstrom, Counselor at Law, 1515 Market Street, Suite
    1200, Philadelphia, PA 19102-1932;
17  Roxann E. Henry, Attorney at Law, 5410 Wilson Lane, Bethesda, MD
    20814, appearing for Defendant Kantola.
18
    Mark A. Byrne of Byrne & Nixon, LLP, 888 West Sixth Street,
19  Suite 1100, Los Angeles, CA 90017;
    Dennis J. Canty, Canty Law Corporation,
20  1990 North California Blvd., 8th Floor, Walnut Creek, CA 94596,
    appearing for Defendant Little.
21
    John Anderson Fagg, Jr. and James McLoughlin of
22  Moore & Van Allen, PLLC, 100 North Tryon Street, Suite 4700,
    Charlotte, NC 28202-4003, appearing for Defendant Lovette.
23

24

25


          Proceedings reported by mechanical stenography; transcription
                          produced via computer.
```

4523

1        APPEARANCES (Continued)

2   Craig Allen Gillen and Anthony Charles Lake of
    Gillen, Withers & Lake, LLC, 400 Galleria Parkway, Suite 1920,
3   Atlanta, GA 30339;
    Richard L. Tegtmeier of Sherman & Howard, LLC,
4   633 17th Street, Suite 3000, Denver, CO 80202-3622, appearing
    for Defendant Roberts.

5

6   Barry J. Pollack of Robbins, Russell, Englert, Orseck &
    Untereiner, LLP, 2000 K Street N.W., 4th Floor, Washington, DC
7   20006;
    Wendy Johnson and Christopher Plumlee of RMP, LLP, 5519 Hackett
8   Road, Suite 300, Springdale, AR 72762, appearing for the
    Defendant Blake.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Kevin P. Carlin, RMR, CRR

4524

20-cr-152-PAB    Jury Trial    03-29-2022

1              P R O C E E D I N G S

2         (Proceedings commenced at 4:14 p.m.)

3              THE COURT:  All right.  We're back on the record in
4    20-cr-152.  The jury has sent out a note.  It's 4:15 now.  The
5    note is dated 3:26, and the note indicates as follows:  We
6    continue to be at an impasse, and cannot come to consensus
7    verdict on any of the ten defendants.  What do we do now?
8    Response on behalf of the United States?

9              MR. KOENIG:  Thank you, Your Honor.  Michael Koenig on
10   behalf of the United States.  Well, the Government proposes that
11   we do give a partial verdict instruction, and I realize that it
12   says we cannot come to a consensus verdict on any of the ten
13   defendants.

14             However, we certainly don't know -- first of all, they
15   should know what their options are, and the -- it's certainly --
16   we don't know their vote count, anything like that.  You know,
17   it could be some are in the 50/50 range, some are 11 to 1, one
18   way or the other.  And they may think that -- they may be under
19   the impression that they have to come to a consensus on all the
20   defendants before they can come back.  And I think they should
21   be, you know, know what their options are.

22             And if they're close on some defendants, whether it's
23   acquittal or the other way, or conviction, they should be
24   apprised of what the law allows for a split verdict, and told
25   that, and given perhaps another -- you could reiterate the *Allen*

Kevin P. Carlin, RMR, CRR

4525

20-cr-152-PAB    Jury Trial    03-29-2022

1   charge.  I don't think there's any problem with that, since it
2   was just given yesterday, and, you know, with the addition of
3   the split verdict instruction.
4           I think that there is, you know -- it's worth giving
5   them the option and letting them know that, you know, if there's
6   some you're close on, you can maybe bang that out.  So, that's
7   the Government's position.
8           THE COURT:  All right.  Thank you, Mr. Koenig.
9   Mr. Kornfeld?
10          MR. KORNFELD:  Your Honor, Rick Kornfeld,
11  K-O-R-N-F-E-L-D, on behalf of Mr. Fries.  We've been four days
12  in.  I don't think it's time for the jury to, quote/unquote,
13  bang up a verdict.  Instruction number 15 duly instructs the
14  jury that they can reach and are to reach separate verdicts as
15  to each defendant.  There's no basis for the Government's
16  request, no basis in terms of smoke signals from the jury based
17  on these notes that they are close on any or one.  In fact, this
18  note, which is -- what are we at?  Nine or ten?  Number ten, I
19  think, is the current --
20          THE COURT:  We're at ten.
21          THE COURTROOM DEPUTY:  It's ten.
22          MR. KORNFELD:  Ten says quite the opposite, that they
23  continue to be at an impasse, and cannot come to consensus or
24  verdict on any of the defendants.  I think the Government's
25  suggestion would be coercive in nature, and the jury has spoken.

Kevin P. Carlin, RMR, CRR

1   It's been 24 hours since we were last in here, and because of
2   all those factors, Your Honor, at this time on behalf of
3   Mr. Fries, we would move for a mistrial and for the jury to be
4   dismissed.
5              THE COURT:  All right.  Thank you, Mr. Kornfeld.
6   Mr. Tubach?
7              MR. TUBACH:  Your Honor, I would join in
8   Mr. Kornfeld's argument.  Michael Tubach on behalf of Mr. Penn.
9   This is the second or potentially third time the jury has said
10  they're at an impasse.  They have already been given an *Allen*
11  charge.  It would be absolutely coercive to tell them after
12  they've told us that they can't reach a verdict as to any of the
13  ten defendants to tell them they can return a partial verdict.
14  That is extremely coercive.  We also move for a mistrial on
15  behalf of Mr. Penn.
16             THE COURT:  All right.  Thank you.  Mr. McLoughlin?
17             MR. McLOUGHLIN:  This is Jim McLoughlin,
18  M-C-L-O-U-G-H-L-I-N, on behalf of Mr. Lovette.  Your Honor, we
19  would join with Mr. Kornfeld and Mr. Tubach.  I would just note
20  that reading the Government's brief in support of a second *Allen*
21  charge and a partial verdict, the brief really mischaracterizes
22  the cases upon which it relies.  For example in *Ailsworth*, where
23  they say there were two *Allen* charges, the first *Allen* charge
24  was given with the general jury instructions.  There was only
25  one *Allen* charge given after the jury indicated that it was

1   having a problem reaching a decision.

2   The same is true with respect to *Robinson*. The same is
3   true with respect to *Lavallee*. There is in fact no credible
4   argument that two consecutive *Allen* charges under the cases they
5   cite, be it *Sharp*, *Lavallee*, *Ailsworth*, is in fact an
6   appropriate strategy and not coercive. The Tenth Circuit's
7   test, based on the language used, the presentation of other
8   instructions, timing, et cetera, would indicate here that it
9   would clearly be coercive.

10   Similarly, with respect to a partial verdict
11   instruction, which the Government seeks without any indication
12   that it would be of assistance to the jury, in fact the
13   opposite, the majority of the cases and the majority of the
14   cases the Government cites are in fact multi-count cases, where
15   a single defendant is facing multiple counts, and we
16   respectfully suggest the analysis there is very, very different
17   than when it is a multi-defendant issue. *DiLapi* is in fact one
18   of those cases, but all of the cases highlight the fact, and
19   particularly in a multi-defendant case, that -- and in all of
20   those cases there was some indication of the fact that there was
21   a split, either with respect to a count or a defendant before
22   the Court gave any multi -- gave a partial verdict instruction.

23   Here, of course, as Mr. Kornfeld indicated, there was a
24   multi-defendant instruction in instruction 15, and there is
25   nothing in the notes and otherwise that would indicate it's

4528

20-cr-152-PAB    Jury Trial    03-29-2022

1  appropriate. So, we would object to any of that as unwarranted
2  under the cases, including those cited by the Government, and we
3  would join in the request for a mistrial. Thank you.
4              THE COURT: All right. Thank you. Mr. Feldberg?
5              MR. FELDBERG: Michael Feldberg. Mr. Austin joins in
6  the application for a mistrial, Your Honor.
7              THE COURT: All right. Thank you. Anyone not join?
8  Might be easier. Okay. No one has spoken up. Mr. Koenig,
9  anything else?
10             MR. KOENIG: Yes. Just briefly, Your Honor. You
11 know, I really don't think that this is coercive, telling them
12 what the law is. I do think it's fair to explain the law in
13 terms of both a second *Allen* instruction and the partial
14 verdict. The partial verdict in the -- in the instructions is
15 very deferential, the language, to the jury. It says, totally
16 up to you. The *Allen* charge says, take as much time as you
17 need. There's nothing coercive about it.
18             And so I just think that, you know, given where we are
19 and where we've been, I think that the -- what is it? Not quite
20 four days, you know, three and three quarter days, you know,
21 given the length of the trial starting on February 22nd, you
22 know, it's just -- it's not -- it's not unreasonable to let the
23 jury continue to work on this.
24             And I don't think there's anything coercive about it,
25 especially the way the Court has been very careful and very

Kevin P. Carlin, RMR, CRR

4529

20-cr-152-PAB    Jury Trial    03-29-2022

1   purposeful in saying there's no rush.  There's no rush.  You
2   know, I think we give them another chance.  You know, this --
3   they need to know the options, and it is after all -- it is ten
4   defendants in a nearly decade-long conspiracy.  It's gonna take
5   time.
6           And I think it really -- the interests of justice favor
7   giving them some more time, and as Your Honor said in the *Allen*
8   instruction, it's not unusual for people to, you know, think
9   they're deadlocked, and then go forward and eventually come to a
10  verdict.  I just think there is time to invest here that would
11  be beneficial.
12          THE COURT:  All right.  First of all, this jury has
13  been hardworking.  The -- we gave them the *Allen* instruction
14  yesterday at 5:00.  They didn't start until about 11 o'clock
15  today, but they went for a long time.  So, there can't be any
16  question that they've been trying to, you know, work as hard as
17  they can.  I think that there -- they really made a sincere
18  effort.
19          Of course, we know from the previous trial that in
20  terms of the length of deliberations, for whatever reason, this
21  seems to be the point at which the jury has just been unable to
22  make any further progress.
23          Mr. Koenig mentioned the phrase, they need to know the
24  options.  One thing is clear, and that is the jury does know the
25  options.  It's true they weren't given that instruction about

Kevin P. Carlin, RMR, CRR

1    partial verdicts, but in the jury note seven, which I
2    characterized as a hypothetical, nonetheless, they knew the
3    options.  If we cannot unanimously agree on a verdict for any of
4    the ten defendants.
5         That exact same language is now reiterated now in jury
6    note number ten, where it says that they continue to be at an
7    impasse, and cannot come to consensus verdict on any of the ten
8    defendants.  So, I think it's readily apparent that they know
9    the options, and they can't come to a verdict on anyone.
10        Telling them that they could I think would result in
11   another note coming right back out that said, you know -- they
12   would probably mimic my language, please see jury note number
13   ten, or please review jury note number ten.  Because I really do
14   think that they are aware of that.
15        So, after having been at an impasse at the end of the
16   day yesterday, being at an impasse at the end of the day today,
17   I think that unfortunately, the Court will have to declare a
18   mistrial.  Mr. Koenig?
19             MR. KOENIG:  Was that a definitive ruling?
20             THE COURT:  Not yet.  I will still hear from you on
21   that.
22             MR. KOENIG:  If I may very respectfully point out that
23   the logic of saying they weren't able to make progress past this
24   point last time, they weren't able to make progress past this
25   point this time, I think it -- we don't know what would happen

1    beyond.  We don't know what would happen with another day.

2           So, it's, you know, because last time the Court did

3    declare a mistrial.  And so it's not really about control, I

4    don't think.  I'm trying to be, you know, very deferential and

5    respectful.  I'm just saying that I think, you know, another day

6    or so could yield results.

7           And whether it's acquittal or whether it's conviction,

8    I think that it's, you know, the interests of justice are

9    certainly served by letting them go a little bit longer and

10   explaining the tenants of the *Allen* instruction again.

11           THE COURT:  Yeah.  I'm going to reject that.  I mean,

12   the language of jury note number ten says cannot come to

13   consensus verdict.  And we know that they were having problems

14   way back as far as jury note number seven.  Then in jury note

15   number nine, we are at an impasse.  Believe me, if I thought I

16   could send them back and in another day, you know, a miracle

17   would happen, I would be tempted to do that.  I just, I really

18   think that the jury has tried.  They sincerely have tried, but

19   it's -- they're at an impasse, and they cannot reach a verdict.

20   So, at this point in time, I am going to declare a mistrial.

21           Mr. Koenig, has the Department of Justice determined

22   the next step in light of that ruling?

23            MR. KOENIG:  Yes, we have.  And so we would, like last

24   time, ask for whatever the outside date is for the Speedy Trial

25   Act.  We do plan to try the case, and we would also, on a side

1  note, ask if Your Honor is inclined to ask for the vote numbers
2  again, if the jury is willing.
3         THE COURT:  Well, let me mention this, first of all.
4  I will reset the trial for -- the speedy trial deadline is
5  June 7th.  So, I will reset the trial for June 6th.  However, I
6  am going to order that the head of the antitrust division come
7  in here within the next week and look me in the eye and explain
8  to me why the Government is going to retry this case.
9         If the Government thinks that the ten defendants and
10 their attorneys and my staff and another group of jurors should
11 spend six weeks retrying this case after the Government has
12 failed in two attempts to convict even one defendant, then
13 certainly Mr. Kanter has the time to come to Denver and explain
14 to me why the Department of Justice thinks that that is an
15 appropriate thing to do.
16        When Mr. Kanter is here, I want him to explain to me
17 the following.  The DOJ manual on prosecution states in part as
18 follows:  The attorney for the Government should commence or
19 recommend federal prosecution if he/she believes that the
20 person's conduct constitutes a federal offense and that the
21 admissible evidence will probably be sufficient to obtain and
22 sustain a conviction.
23        It goes on to say, both as a matter of fundamental
24 fairness and in the interest of the efficient administration of
25 justice, no prosecution should be initiated against any person

1  unless the attorney for the Government believes that the
2  admissible evidence is sufficient to obtain and sustain a guilty
3  verdict by an unbiased trier of fact.
4       So, the question for Mr. Kanter is why, after the
5  Government has tried twice and failed, it believes that a third
6  time admissible evidence will probably be sufficient to obtain
7  and sustain a conviction.  All right?  Let me know what his
8  schedule is.  I've got a trial that starts next week, but I will
9  accommodate what his schedule is.  It will be in open court.
10 All right?
11      MR. KOENIG:  Understood.  Thank you.
12      MS. PREWITT:  Your Honor, I would ask that we reserve
13 on the question of whether to declare the mistrial with
14 prejudice or not.  The defendants would like to confer on that,
15 and I would ask that you just reserve on the with prejudice or
16 without prejudice, Your Honor.
17      THE COURT:  Yeah.  At this point, as I said, I am
18 going to reset the trial.  If the defendants have a motion that
19 they think has a basis in law, then obviously they could file
20 one.  The standard that I just read is not a standard of -- that
21 anyone can enforce.  It's the department's internal standard,
22 as, Ms. Prewitt, you well know, but anyway, I do want Mr. Kanter
23 to explain that to me.
24      MS. PREWITT:  Thank you, Your Honor.
25      THE COURT:  Mr. Tubach?

1                MR. TUBACH:  Michael Tubach on behalf of Mr. Penn.  I
2    understand the Court has reset the trial for June 6th.  Would
3    the Court be amenable at all to resetting it for an earlier
4    date?  May 2.  That would be the request of Mr. Penn.
5                THE COURT:  I am not going to consider that at this
6    point in time.  There's lots of moving parts and things of that
7    nature.  I haven't looked at my schedule, but any request for
8    moving the trial date around, we'll have to take that up later.
9                MR. TUBACH:  Thank you very much.
10               THE COURT:  Thank you.
11               MR. KORNFELD:  Just briefly in terms of the
12   open-court -- Rick Kornfeld on behalf of Mr. Fries.  In terms of
13   the open-court colloquy with Mr. Kanter, once the Court knows
14   that schedule, will you be setting a status?  And if so, may our
15   clients' presence be waived, since they're from -- they will be
16   back home?
17               THE COURT:  Right.  Absolutely.  And, you know, we
18   will try to accommodate video appearances or VTC or audio
19   whatever, but I do want to have it soon.  And, you know, I
20   understand -- I'm sure that Mr. Kanter is a busy person, so we
21   will try to accommodate, you know, when he's available.  And as
22   soon as we know, I will make sure that a notice to that effect
23   is issued.  And if people can only attend -- I mean, some people
24   have local counsel, and others don't, but we will obviously try
25   to accommodate things as best as possible.

                          Kevin P. Carlin, RMR, CRR

4535

20-cr-152-PAB    Jury Trial    03-29-2022

1     MR. KORNFELD: Thank you, Your Honor.

2     THE COURT: Yeah. Mr. Byrne?

3     MR. BYRNE: Mark Byrne, B-Y-R-N-E, for Mr. Jimmie
4 Little. And I assume if Mr. Kanter decides and changes his mind
5 perhaps before he meets with Your Honor, then we will all know,
6 then there would be no need for a hearing; correct?

7     THE COURT: It sounds like a nice rhetorical point,
8 but obviously we will see.

9     MR. BYRNE: Just wanted to throw it out there.

10     THE COURT: All right. Thank you. All right.
11 Anything else? All right. Then the defendants' bonds will be
12 continued, and the Court will be in recess. Thank you. I
13 forgot. We have to bring the jurors in. Okay. We will bring
14 the jury in.

15     MR. KOENIG: Your Honor, before the jury comes in,
16 would you be willing, after they're dismissed, to ask for the
17 counts, the splits?

18     THE COURT: Unless there's unanimity on that request,
19 just like last time. There was unanimity last time. Is there
20 unanimity this time?

21     MR. TUBACH: No, Your Honor.

22     THE COURT: So, I'm not going to. Sorry, Mr. Koenig.

23     (Jury in at 4:35 p.m.)

24     THE COURT: Ladies and gentlemen, we obviously got
25 your latest note indicating that you are at an impasse, and at

1  this time I am going to -- have already declared a mistrial in
2  this case.  What that means, ladies and gentlemen, is that I am
3  going to excuse you from your duties in this particular case,
4  and also let you know of the following, and that is pursuant to
5  my order, I am going to order that no party or attorney for a
6  party talk to you about this case.  Okay?
7          So, that means that should you be contacted -- and I'm
8  sure you won't, given my order, but were you to be contacted by
9  an attorney in this case or by a party in this case or someone
10 working for either of them to talk to you about this case, you
11 should report that to my chambers.
12         That does not mean, ladies and gentlemen, that someone
13 else unconnected with the parties in this case may not attempt
14 to contact you.  That could very well happen.  And whether or
15 not you talk to that person or those persons is entirely up to
16 you.  You will recall way back when at the beginning of the
17 case, I told you that once you're released from your obligations
18 in this case, you're completely free to talk to people or not
19 talk to people.  It's up to you.
20         Also, of course, you will be free to look up
21 information about this case, write a book about this case, not
22 think about this case ever again.  All of that, once again,
23 completely up to you.  All right, ladies and gentlemen?
24         On behalf of the parties in this case, on behalf of the
25 Court, I can't thank you enough for your service in this case.

Kevin P. Carlin, RMR, CRR

4537

20-cr-152-PAB    Jury Trial    03-29-2022

1  Each of you was so dedicated in paying attention to what was
2  oftentimes very complicated evidence, hundreds of exhibits, lots
3  of witnesses.  And it took you a long time.  It took you away
4  from work and home responsibilities, undoubtedly.
5          So -- and of course, you had the -- probably the one
6  month out of the season where we had snow, you know, at least
7  once a week or twice a week.  So, you had to fight through all
8  of those things, too.  So, anyway, you went above and beyond the
9  call, and we thank you very much for that.
10          I know, ladies and gentlemen, that you're busy people,
11 and you're probably anxious to return to your normal lives.
12 However, if some of you or all of you want to stick around for
13 just a few minutes in the jury room, I'd like to drop by the
14 jury room just to give you my personal thanks for your service
15 in this particular case.  All right?  Ladies and gentlemen, at
16 this time, the jury is dismissed.
17        (Jury out at 4:40 p.m.)
18          THE COURT:  Thank you.  All right.  Anything now --
19 anything additional now, Mr. Koenig?
20          MR. KOENIG:  We have heard your message regarding the
21 assistant attorney general.  We will report back as soon as
22 possible, and promptly.
23          THE COURT:  Yeah.  I appreciate that.  Anything else?
24 All right.  We will be in recess.  Thank you.
25        (Proceedings concluded at 4:42 p.m.)

Kevin P. Carlin, RMR, CRR

4538

1          REPORTER'S CERTIFICATE

4          I, KEVIN P. CARLIN, Official Court Reporter for the
5  United States District Court for the District of Colorado, a
6  Registered Merit Reporter and Certified Realtime Reporter, do
7  hereby certify that I reported by machine shorthand the
8  proceedings contained herein at the time and place
9  aforementioned and that the foregoing pages constitute a full,
10 true, and correct transcript.
11         Dated this 31st day of March, 2022.

                                    _____
                                    Kevin P. Carlin, RMR, CRR
                                    Official Court Reporter

Kevin P. Carlin, RMR, CRR